Andrew S. Friedman, Esq. (005425)
afriedman@bffb.com
Francis J. Balint, Jr. (007669)
fbalint@bffb.com
**BONNETT FAIRBOURN FRIEDMAN**
  **& BALINT, P.C**.
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald L. Jackson, as Trustee Under Agreement Dated 01/05/2012 by Ronald L. Jackson, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Microchip Technology Inc., Steven Sanghi, and Ganesh Moorthy,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY** |

Plaintiff Ronald L. Jackson, as Trustee Under Agreement Dated 01/05/2012 by Ronald L. Jackson ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of a class consisting of all persons other than defendants and other excluded persons who purchased or otherwise acquired Microchip Technology Inc. ("Microchip" or the "Company") common stock on the open market from March 2, 2018 through August 9, 2018, both dates inclusive (the "Class

1

Period"), seeking to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company's principal place of business is located within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

6. Plaintiff Ronald L. Jackson, as Trustee Under Agreement Dated 01/05/2012 by Ronald L. Jackson, purchased Microchip common stock in reliance on defendants' materially false and misleading statements and omissions of material facts, and on the integrity of the market for Microchip common stock, at artificially inflated prices during the Class Period, and was damaged when the truth about Microchip was revealed to the market. The certification of Plaintiff, with a listing of transactions in Microchip common stock during the

Class Period, is annexed hereto.

7.  Defendant Microchip is a Delaware corporation with its principal executive offices located in Chandler, Arizona. Microchip common stock trades on the NASDAQ Global Market under the stock symbol "MCHP." Microchip is a provider of microcontroller, mixed-signal analog and Flash-IP solutions.

8.  Defendant Steven Sanghi has served as the Company's CEO since October 1991 and as Chairman of the Board since October 1993, Sanghi served as President from August 1990 to February 2016 and has served as a director since August 1990.

9.  Defendant Ganesh Moorthy has served as the company's President since February 2016 and as Chief Operating Officer since June 2009.

## SUBSTANTIVE ALLEGATIONS

10. On March 1, 2018, after the close of the market for Microchip common stock, Microchip issued a press release announcing that it had signed a definitive agreement to acquire Microsemi Corp. ("Microsemi") for $68.78 per share in cash.

11. According to the press release, the acquisition price represented a total equity value of approximately $8.35 billion, and a total enterprise value of about $10.15 billion, after accounting for Microsemi's cash and investments, net of debt, on its balance sheet at December 31, 2017.

12. In announcing the acquisition, Sanghi emphasized that the acquisition would be "accretive" [positive to earnings per share] to Microchip going forward[1]:

> Microchip continues to view accretive acquisitions as a key strategy to deliver incremental growth and shareholder value. The Microsemi acquisition is the latest chapter of this strategy and will add further operational and customer scale to Microchip.

13. The press release added that "[f]ollowing the closing, the transaction is expected to be immediately accretive to Microchip's non-GAAP earnings per share."

14. Defendant Moorthy added on the press release that "Microchip and Microsemi have a strong tradition of delivering customers and markets, thus creating highly valued and long-lasting revenue streams."

15. The announcement of the acquisition was timed to coincide with Microchip's March 1, 2018 Investor Day.

16. At the Investor Day presentation immediately after the issuance of the press release, Sanghi assured investors of Microsemi's strong financial position, stating that (i) Microsemi was the "[f]irst company we're buying in our string of acquisitions, where their gross margin is higher than us," and was "strategically and financially, a very compelling transaction." Specifically, Sinnghi stated on the call that Microsemi had sales of "about $1.875 billion annualized, still higher gross margin of 63.2% and an operating income of 32.2%."

17. Sanghi emphasized again on the call that the "deal is accretive on day one

---

[1] "An accretive acquisition will increase the acquiring company's earnings per share (EPS). Accretive acquisitions tend to be favorable for the company's market price, because the price paid by the acquiring firm is lower than the boost that the new acquisition is expected to provide to the acquiring company's EPS." https://www.investopedia.com/terms/a/accretiveacquisition.asp .

4

without doing anything, without any synergy."

18. Microchip ended the Investor Day PowerPoint presentation by stating in large bold letters – "Another Compelling Transaction!"

19. The Microsemi merger announcement was well-received by investors, with Microchip common stock advancing on March 2, 2018 by $2.27 (to close at $91.29) on above average reported trading volume of approximately 8.5 million shares.

20. On April 19, 2018, Microsemi filed a Proxy Statement with the SEC scheduling a shareholder vote on the Microchip acquisition. The Proxy Statement represented that Microchip had the opportunity to conduct due diligence of Microsemi's business prior to entering into the Merger Agreement:

> On February 2, 2018, Microsemi received a written due diligence request list from Microchip, and Microsemi provided Microchip with access to Microsemi's virtual data room. During the remainder of February 2018, Microsemi, Microchip and their respective advisors participated in diligence calls and Microsemi and its advisors responded to additional due diligence requests from Microchip and its advisors.

21. On May 29, 2018, Microchip issued a further press release announcing that Microchip had completed its previously announced acquisition of Microsemi. Sanghi was quoted in the press release as stating that the "Microsemi acquisition will significantly enhance our product portfolio, end-market diversification, operational capabilities and customer scale."

22. The press release added that the "transaction is expected to be immediately accretive to Microchip's non-GAAP earning per share."

23. On May 31, 2018, after the close of the market, Microchip issued a press

release updating guidance for net sales and non-GAAP earnings per share for its fiscal first quarter of 2019 ending June 30, 2018, in light of the completion of the acquisition of Microsemi by Microchip.

24. Microchip had previously provided guidance on May 8, 2018, prior to the acquisition, for consolidated non-GAAP net sales to be up between 1% and 6% sequentially with a mid-point of up 3.5%.

25. As Sanghi stated in Microchip's May 8, 2018 press release and on other occasions, non-GAAP revenue and earnings reflected sell-through to ultimate customers, whereas GAAP revenue and earnings reflected sales to distributors:

> Beginning April 1, 2018, we adopted the new GAAP revenue recognition standard which requires us to recognize revenue at the time products are sold to distributors whereas currently, revenue on such transactions are deferred until the product is sold by our distributor to an end customer. We are not able to provide guidance on a GAAP basis as we are not able to predict whether inventory at our distributors will increase or decrease in relation to end-market demand. As evidence of this uncertainty, in recent years, we have seen net inventory at our distributors increase or decrease by a significant amount in a single quarter. Our non-GAAP revenue will be based on what we believe reflects true end-market demand in which we measure the revenue based on when the product is sold by our distributors to an end customer.

26. The May 31, 2018 press release reported that "Microchip expects non-GAAP net sales based on end market demand from Microsemi to add between $160 million to $180 million to its June quarter results, and now expects consolidated non-GAAP net sales for the June quarter to be up 17% to 24% sequentially. Microchip expects Microsemi to add between 2 cents to 6 cents to non-GAAP earnings per share. The combined non-GAAP earnings per share for Microchip and Microsemi is expected to be between $1.41 and $1.55

6

per share. The original guidance for Non-GAAP earnings per share was between $1.39 and $1.49 per share."

27.     The May 31, 2018 press release was consistent with defendants' prior representations that the Microsemi acquisition would be "immediately accretive" to earnings per share.  The press release was well received by investors with the Microchip common stock advancing on June 1, 2018 to $101.05 per share (up $3.67 per share).

28.     Sanghi added in the press release that "[o]ur combined teams are now laser focused on delivering the synergies we identified, and to achieve the accretion targets which will enable us to rapidly start reducing our leverage."

29.     On August 9, 2018, Microchip announced first quarter fiscal 2019 operating results for the quarter ended June 30, 2018.  The first quarter operating results included one month of Microsemi's operating results (from the date of the acquisition).

30.     On a conference call conducted after the earnings announcement, Sanghi acknowledged that Microchip's due diligence on Microsemi prior to the acquisition had been inadequate and that much of Microsemi's revenue reported prior to the merger was not supported by end user demand, but rather resulted from excess distribution into the channel:

> [W]e found that Microsemi management was extremely aggressive in shipping inventory into the distribution channel. Microsemi's distributors had about four months of inventory whereas Microchip's distributors carry about 2.5 months of inventory. While we have seen some excess shipments of inventory into the distribution channel in other acquisitions, we have never seen as much excess as we found in the case of Microsemi. Microsemi also overshipped into the contract manufacturers by making deals and offering discounts. This excessive distribution and contract manufacturer's inventory will provide some headwind for revenue for the next couple of quarters. Our trailing EBITDA and the next two quarters of cash generation will also be impacted by needing to correct this inventory for Microsemi products.

31. Sanghi stated that Microchip had taken immediate measures to reduce inventory which had a negative impact on Microsemi's June revenue and anticipated revenue for the balance of calendar 2018:

> We did not make any deals with the distribution contract manufactures or end customers in the month of June to ship excess inventory. As a result, we shipped close to $100 million less in the month of June than Microsemi ex-management would have shipped. That was nearly half the inventory correction accomplished in a single month. We expect to achieve the balance of the distribution inventory correction in the next two quarters and nearly complete the correction by the end of this calendar year. Based on high inventory in distribution as well as inside Microsemi, we have substantially cut back on the manufacturing build plan in internal factories as well as foundries and assembly test subcontractors. The vast majority of Microsemi business is subcontracted, so we will see a dollar-for-dollar cash saving which will offset the negative cash impact of – some of the negative cash impact of inventory correction.

32. Sanghi also stated that he and Microchip's other senior executives were caught unaware of Microsemi's culture of excessive spending:

> While excessive shipments into distribution and contract manufacturers has been the main issue at Microsemi, we also found a culture of excessive extravagance and high spending. The company had millions of dollars of sponsorships in several luxury suites in sports stadiums, luxury private plane travel, and generous sponsorships for many conferences, stadiums and other venues that have wasted their shareholders' money. We are undoing commitments to all such spending.

33. Prior to the August 9, 2018 conference call, analysts had projected second quarter fiscal 2019 (period ending September 30, 2018) revenue for Microchip of $1.59 billion based on defendants' public statements. Microchip however on the August 9, 2018 call projected revenue for the second quarter at a mid-point of $1.51 billion – $80 million lower that consensus expectations.

8

34. Analysts were quick to identify the cause of the revenue shortfall as Microsemi's aggressive pre-acquisition revenue recognition practices. For example, a JP Morgan analyst stated:

> We believe that 70% of the miss was from [Microsemi] and attributed to MSCC distribution channel stuffing which implies that true end demand revenue was well below what MSCC had been reporting over the last few quarters. As a result, MSCC had inflated revenues leading up to the acquisition (sell-in revenue recognition).

35. When these true facts were revealed, Microchip common stock fell on August 10, 2018 by $10.67 per share from its close on August 9, 2018 of $98.08 to its close on August 10, 2018 of $87.41 per share – a decline of approximately 10.9%. Reported trading volume of 19.2 million shares was approximately ten times normal trading volume during the Class Period.

36. Defendants' statements during the Class Period were materially false and misleading during the Class Period. Microchip had done inadequate due diligence and was unable to make any statements concerning whether the Microsemi acquisition was "immediately accretive." Microchip was not "laser focused on delivering the synergies we identified, and to achieve the accretion targets…." In fact, it was apparent to investors from the August 9, 2018 conference call that the Individual Defendants lacked fundamental knowledge of Microsemi's business such as the amount of inventory in the channel, Microsemi's policies with respect to sell-through of inventory, and Microsemi's expenditures on promotions and executive perquisites.

37. Defendants' false statements were also made with scienter because the Individual Defendants and other Microchip senior officers who participated in the Microsemi

9

acquisition had actual knowledge or acted with reckless indifference to Microchip's lack of due diligence and bases for public statements with respect to the merger. In fact, the defendants were primarily motivated, rather than to do adequate due diligence, to sign the merger documents and announce the acquisition at Microchip's Investor Day, scheduled in advance on March 1, 2018. There was no reason to sign the merger documents with such urgency, and without adequate due diligence, other than the Individual Defendants' hubris.

38. Sanghi acknowledged on the March 1, 2018 conference call that he "signed that deal one minute before market closed today 3:59 New York time. This was herculean task." What Sanghi neglected to tell investors is that in his rush to close the transaction, Microchip failed to do adequate due diligence of Microsemi's business.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Microchip common stock on the open market during the Class Period (March 2, 2018 through August 9, 2018) (the "Class"); and were damaged thereby. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Microchip common stock was actively traded on the NASDAQ, an efficient market. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff

believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Microchip or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;
- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Microchip and Microsemi;
- whether defendants caused Microchip to issue false and misleading financial statements during the Class Period;
- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Microchip common stock during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Microchip common stock is traded in an efficient market;
- the Company's shares were liquid and traded with heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and
- Plaintiff and members of the Class purchased, acquired and/or sold Microchip common stock between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

# COUNT I
### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Microchip common stock during the Class Period.

51. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Microchip were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance

or dissemination of such statements or documents as primary violations of the securities laws. These Defendants, by virtue of their receipt of information reflecting the true facts of Microchip and Microsemi, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Microchip, participated in the fraudulent scheme alleged herein.

52. The Individual Defendants, who were the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Microchip personnel to members of the investing public, including Plaintiff and the Class.

53. As a result of the foregoing, the market price of Microchip common stock was artificially inflated during the Class Period. Unaware of the falsity of the statements by Defendants, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Microchip common stock during the Class Period in purchasing Microchip common stock at prices that were artificially inflated as a result of the false and misleading statements by Defendants.

54. Had Plaintiff and the other members of the Class been aware that the market price of Microchip common stock had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Microchip common stock at the artificially inflated

prices that they did, or at all.

55. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

56. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Microchip common stock during the Class Period.

**COUNT II**
**(Violations of Section 20(a) of the**
**Exchange Act Against the Individual Defendants)**

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. The Individual Defendants named in this count acted as controlling persons Microchip within the meaning of Section 20(a) of the Exchange Act as alleged herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of Microchip, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information about the Company's misstatement and false statements.

60. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Microchip financial condition and results of operations, and to correct promptly any public statements issued by Microchip which had become materially false or misleading.

61. Because of their positions of control and authority as senior officers, the

Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Microchip disseminated in the marketplace during the Class Period.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Microchip to engage in the wrongful acts complained of herein. The Individual Defendants therefore, are "controlling person" of Microchip within the meaning of Section 20(a) of the Exchange Act.

62. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Microchip.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 14, 2018

        **BONNETT FAIRBOURN FRIEDMAN**
          **& BALINT, P.C.**

By: */s/Andrew S. Friedman*
    Andrew S. Friedman, Esq. (005425)
    afriedman@bffb.com
    Francis J. Balint, Jr. (007669)
    fbalint@bffb.com
    2325 East Camelback Road, Suite 300
    Phoenix, AZ 85016
    Telephone: (602) 274-1100

**WOLF POPPER LLP**
Robert C. Finkel
rfinkel@wolfpopper.com
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600