Andrew S. Friedman, Esq. (005425)
afriedman@bffb.com
Francis J. Balint, Jr. (007669)
fbalint@bffb.com
**BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100

*Attorneys for Lead Plaintiff and*
*Court-Appointed Liaison Counsel to the Class*

**[Additional Counsel on Signature Block]**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald L. Jackson, as Trustee Under Agreement Dated 01/05/2012 by Ronald L. Jackson, Individually, and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>v.<br><br>Microchip Technology, Inc.; Steven Sanghi; Ganesh Moorthy; and J. Eric Bjornholt,<br><br>                Defendants. | Case No. 2:18-cv-02914-ROS<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

I.     INTRODUCTION ................................................................................ 1

II.    OVERVIEW OF THE ACTION................................................................ 1

III.   TERMS OF THE SETTLEMENT ............................................................ 4

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS
       WARRANTED ...................................................................................... 5

       A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the
             Class ....................................................................................... 6

       B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length
             Negotiations ............................................................................ 7

       C.    The Relief Provided by the Settlement Is Adequate ..................... 8

             1.    The Cost, Risks and Delay of Trial and Appeal Support
                   Approval of the Settlement ................................................ 8

             2.    The Proposed Method for Distributing Relief Is Effective............ 10

             3.    The Anticipated Attorneys' Fees and Expenses Are Reasonable ... 11

             4.    Settlement Class Members Are Treated Equitably Relative to
                   One Another ..................................................................... 12

       D.    The Remaining Ninth Circuit Factors Support Preliminary Approval of
             the Settlement ......................................................................... 12

             1.    Extent of Discovery Completed and Stage of Proceedings at
                   Which A Settlement Was Achieved................................... 12

             2.    Risk of Maintaining Class Action Status Through Trial ................ 13

             3.    The Experience and Views of Counsel .......................... 13

V.     THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE
       PROCESS, AND THE PSLRA REQUIREMENTS............................................ 14

VI.    THE COURT SHOULD ACCEPT ALL REQUESTS FOR EXCLUSION ........ 15

VII.   PROPOSED SCHEDULE FOR FINAL APPROVAL........................................ 16

VIII.  CONCLUSION ................................................................................ 17

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Abante Rooter & Plumbing v. Pivotal Payments*,
    No. 3:16-cv-05486-JCS.
    2018 U.S. Dist. LEXIS 232054 (N.D. Cal. Oct. 15, 2018) .................................... 15

4

5

*In re Banc of Cal. Sec. Litig.*,
    No. SACV 17-00118 AG (DFMx),
    2019 U.S. Dist. LEXIS 209386 (C.D. Cal. Dec. 4, 2019) ..................................... 7

6

7

*In re Broadcom Corp. Sec. Litig.*,
    No. SACV 01-275 DT (MLGx),
    2005 U.S. Dist. LEXIS 41983 (C.D. Cal. Sep. 12, 2005) ....................................... 8

8

9

*In re Broadcom Corp. Sec. Litig.*,
    No. SACV 01-275 DT (MLGx),
    2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sep. 12, 2005) ..................................... 12

10

11

*Ciuffitelli v. Deloitte & Touche Lp*,
    No. 3:16-cv-00580-AC,
    2019 U.S. Dist. LEXIS 61386 (D. Or. Mar. 19, 2019) ......................................... 12

12

13

*Class Plaintiffs v. City of Seattle*.
    955 F.2d 1268 (9th Cir. 2008) ..................................................................................... 5

14

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15-cv-04883-BLF,
    2019 U.S. Dist. LEXIS 121886 (N.D. Cal. July 22, 2019) ..................................... 7

15

16

*Facciola v. Greenberg Traurig LLP*,
    No. CV-10-1025-PHX-FJM,
    2012 U.S. Dist. LEXIS 191695 (D. Ariz. Aug. 31, 2012) .................................... 16

17

18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................. 6, 13

19

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST,
    2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17, 2018) ............................. 6, 13

20

21

*Hurtado v. Rainbow Disposal Co.*,
    No. 8:17-cv-01605-JLS-DFM,
    2021 U.S. Dist. LEXIS 6030 (C.D. Cal. Jan. 4, 2021).......................................... 13

22

23

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019)........................................................................................ 5

24

25

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012)..................................................................................... 14

26

*Lloyd v. Navy Fed. Credit Union*.
    No. 17-cv-1280-BAS-RBB.
    2018 U.S. Dist. LEXIS 181055 (S.D. Cal. Oct. 22, 2018)..................................... 15

27

28

*In re MGM Mirage Sec. Litig.*,
    708 F. App'x 894 (9th Cir. 2017)........................................................................ 11

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA (JCS).
    2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 19, 2008) ................................... 5

*Officers for Justice v. Civil Serv. Com.*,
    688 F.2d 615 (9th Cir. 1982)............................................................................... 5

*Pataky v. Brigantine, Inc.*,
    No. 17-cv-00352-GPC-AGS,
    2018 U.S. Dist. LEXIS 101663 (S.D. Cal. June 18, 2018) ................................... 7

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW,
    2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ................................... 7

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................. 5, 13, 14

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ........................................................................... 5

*Vega v. Weatherford U.S., Ltd. P'ship*,
    No. 1:14-cv-01790-JLT,
    2016 U.S. Dist. LEXIS 169448 (E.D. Cal. Dec. 7, 2016)..................................... 11

*Wood v. Ionatron, Inc.*,
    No. CV 06-354-TUC-CKJ,
    2009 U.S. Dist. LEXIS 140975 (D. Ariz. Sep. 28, 2009) ................................... 12

*In re Zynga Sec. Litig.*,
    No. 12-cv-04007-JSC.
    2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015) ................................... 12

**Statutes**

15 U.S.C. § 78u-4(a)(4) ...................................................................................... 11

15 U.S.C. § 78u-4(a)(7)(A)-(F) ............................................................................. 15

**Other Authorities**

Fed. R. Civ. P. 23(c)(1) ...................................................................................... 13

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 14

Fed. R. Civ. P. 23(e)(1)(A) ................................................................................... 5

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................. 5, 14

Fed. R. Civ. P. 23(e)(2) ............................................................................ 6, 7, 11, 12

I.      **INTRODUCTION**

Lead Plaintiff Ronald L. Jackson ("Lead Plaintiff"), on his own behalf and on behalf of the certified Class,[1] has reached a proposed class Settlement with Microchip Technology, Inc., Steve Sanghi, Ganesh Moorthy, and J. Eric Bjornholt ("Defendants") which, if approved, will resolve all claims alleged against Defendants in exchange for a cash payment of $9,000,000 for the benefit of the Class. The Settlement (as set forth in the Stipulation) is the product of good-faith and arm's-length negotiations between and among highly experienced counsel, following extensive fact and expert discovery, and facilitated by a well-respected mediator. The Settlement is a favorable outcome for the Class in light of the substantial risks and costs attendant to continued litigation and the immediate economic benefits to Class Members. Lead Plaintiff therefore respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of the proposed Preliminary Approval Order attached to the Stipulation as Exhibit A, which will: (i) preliminarily approve the proposed class action Settlement; (ii) approve the form, content and manner of providing notice of the Settlement to the Class; and (iii) set a schedule for final approval of the Settlement. Defendants do not oppose this motion.

II.     **OVERVIEW OF THE ACTION**

This is a securities fraud class action alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j and 78t) and SEC Rule 10b-5 brought on behalf of investors who purchased or otherwise acquired Microchip common stock on a U.S. open market during the March 2, 2018 through August 9, 2018 Class Period.[2]

On February 22, 2019, Lead Plaintiff filed the operative amended Complaint. ECF No. 32.  As alleged in the Complaint, on March 1, 2018, Defendants announced that Microchip would acquire Microsemi Corporation. The Merger closed on May 29, 2018.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated March 7, 2022 ("Stipulation"), submitted herewith as Exhibit 1.

[2] The litigation was originally assigned to Judge J. John Tuchi. On April 22, 2021, the Litigation was re-assigned to Judge Roslyn O. Silver. ECF Nos. 8, 77.

1    The Complaint alleges that, on August 9, 2018, after the market for Microchip common

2    stock closed, Defendants disclosed in an investor conference call, among other things, that

3    they had "found that Microsemi management was extremely aggressive in shipping

4    inventory into the distribution channel," Microchip had "shipped close to $100 million

5    less in the month of June than Microsemi ex-management would have shipped,"

6    representing "nearly half the inventory correction," and that Defendants "expect[ed] to

7    achieve the balance of the distribution inventory correction in the next two quarters."  The

8    Complaint alleges that Defendants misrepresented or omitted facts concerning the

9    Microsemi acquisition relating to channel stuffing during the Class Period, that

10    Defendants' disclosures on August 9, 2018 revealed to the market the truth concerning

11    those alleged misrepresentations or omissions, and as a result of these disclosures, on

12    August 10, 2018, Microchip common stock fell $10.67, or 10.9%, per share.

13    On April 1, 2019, Defendants moved to dismiss and to strike certain portions of the

14    Complaint, which Lead Plaintiff opposed.  ECF No. 36-39.  On March 11, 2020, the Court

15    granted in part and denied in part Defendants' motion to dismiss. ECF No. 44.

16    On February 22, 2021, the Court issued an order granting Lead Plaintiff's motion

17    for class certification (ECF No. 67-68), which certified the Class, appointed Lead Plaintiff

18    as Class Representative, and appointed Wolf Popper LLP as Lead Class Counsel, and

19    Bonnett Fairbourn Friedman & Balint P.C. as Liaison Counsel. ECF No. 76.

20    On August 9, 2021, the Parties filed a Stipulation Regarding Class Notice

21    Procedures, which set forth a plan to provide notice of class certification to the Class

22    through a Postcard Class Notice to be mailed to potential class members, a Summary Class

23    Notice to be published on a national wire service, and a Class Notice Website where copies

24    of a Longform Class Notice could be downloaded. ECF No. 80. On August 10, 2021, the

25    Court issued an Order granting the Stipulation. ECF No. 81.

26    The Summary Class Notice was published on *PR Newswire* on August 25, 2021.

27    ECF No. 85, ¶ 9. On or about September 3, 2021, the Notice Administrator established

28    the Class Notice Website, which contained information on the Action and downloadable

copies of the Longform Class Notice and other Court documents. *Id.* ¶ 11. Postcard Class Notices were mailed to potential Class Members and their Nominees starting on September 3, 2021. *Id.*, ¶¶ 3-6. The Postcard Class Notice and Summary Class Notice, among other things, (a) provided information about the Action, (b) informed Class Members of their right to request exclusion from the Class, and that requests for exclusion must comply with the instructions set forth in the Longform Class Notice and be sent to the Notice Administrator such that they were postmarked by November 2, 2021, and (c) directed Class members to the Class Notice Website and the Longform Class Notice for more information on the Action and the procedures and requirements to request exclusion from the Class. ECF No. 85-1. As of November 17, 2021, the Notice Administrator had mailed or provided copies of 186,125 Postcard Class Notices to potential Class Members and Nominees. ECF No. 91, ¶ 3. The Notice Administrator received a total of 31 requests for exclusion, which are discussed below at § VI. *Id.* ¶¶ 7-8.

In this case, discovery has been vigorous and extensive, including interrogatories, document requests, requests for admission, production of more than 180,000 documents totaling more than 2.2 million pages (not including native video, audio, and excel files), and fact and expert depositions. Plaintiff's Counsel and Defendants' Counsel held exhaustive discussions about discovery requests and the responses and objections to the discovery requests through extensive letters and emails, and numerous telephonic meet and confer conferences. Lead Plaintiff deposed eight fact witnesses and served subpoenas for documents on a number of third parties over the course of the Action. Defendants deposed Lead Plaintiff. Fact discovery closed on November 1, 2021. In furtherance of the expert disclosure process, Lead Plaintiff served reports from two expert witnesses, who were subsequently deposed by Defendants. Defendants served four expert reports.

As the foregoing shows, each side has unquestionably amassed substantial factual and expert testimony bearing on their respective claims and defenses and, given the advanced stage of the Action, the parties and their counsel are well-positioned to evaluate the merits, risks, costs and delays associated with continued litigation.

1   Armed with that knowledge, the Parties engaged a neutral third-party mediator,
2   Robert Meyer, Esq. of JAMS, who has a national reputation for his experience in
3   mediating securities and other complex class actions. The Parties conducted a full day
4   virtual mediation on January 25, 2022. In advance of the mediation, the Parties submitted
5   to Mr. Meyer and exchanged detailed pre-mediation statements. At the end of the full day
6   mediation, Mr. Meyer made a mediator's proposal for the Action to settle for $9,000,000.
7   Lead Plaintiff and Defendants accepted the mediator's proposal.

8   **III.   <u>TERMS OF THE SETTLEMENT</u>**

9   This Settlement requires Defendants to pay, or cause to be paid, $9 million in cash
10  to the Escrow Account. Stipulation, ¶¶ 1.66, 3.1. Once the Court-approved Administrative
11  and Notice Costs, Taxes and Tax Expenses, Attorney's Fees and Expenses, and Class
12  Representative's Service Award are deducted from the Settlement Fund, the remaining
13  balance (*i.e.*, the Net Settlement Fund) shall be distributed (upon a Court order) to
14  Authorized Claimants pursuant to the Stipulation and Plan of Allocation. Stipulation, ¶
15  8.2. There will be no reversion to Defendants of any portion of the Settlement Fund. In
16  exchange, Lead Plaintiff and each Class Member (except Excluded Class Members who
17  validly and timely submitted a request for exclusion from the Class and as set forth in ¶
18  1.57 of the Stipulation) will be deemed to have fully, finally, and forever waived,
19  compromised, settled, discharged, dismissed, extinguished, and released each and every
20  one of the Released Claims against each and every one of the Released Defendants' Parties,
21  and will be forever barred from commencing, instituting, prosecuting, or maintaining any
22  and all of the Released Claims against any and all of the Released Defendants' Parties. *Id.*
23  ¶ 2.3.

24  Lead Counsel proposes that A.B. Data, which previously oversaw the
25  dissemination of notice of class certification (the Class Notice Program) in 2021, be
26  retained as the Claims Administrator subject to the Court's approval. The Claims
27  Administrator shall, under Lead Counsel's supervision, administer the Settlement Notice
28  Program, administer and calculate the claims submitted by Class Members, and oversee

1    distribution of the Net Settlement Fund to Authorized Claimants. Stipulation, ¶¶ 6.1-6.5,

2    8.1, 8.3. The details of the Settlement Notice Program are discussed below in § V.

3    **IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED**

4           Strong judicial policy favors settlement of class actions in the Ninth Circuit. *In re*

5    *Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 556 (9th Cir. 2019); *Class Plaintiffs v.*

6    *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 2008); *In re NVIDIA Corp. Derivative Litig*.,

7    No. C-06-06110-SBA (JCS), 2008 U.S. Dist. LEXIS 117351, at *6-7 (N.D. Cal. Dec. 19,

8    2008). "Additionally, there is a strong judicial policy that favors settlements, particularly

9    where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d

10   1095, 1101 (9th Cir. 2008); *NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at *6 (same).

11          Moreover, recognizing that a proposed settlement reflects the agreement reached

12   by adversaries, the Ninth Circuit has held that courts should defer to "a private consensual

13   agreement negotiated between the parties" to settle a case and should limit their intrusion

14   to "the extent necessary to reach a reasoned judgment that the agreement is not the product

15   of fraud or overreaching by, or collusion between, the negotiating parties, and that the

16   settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers*

17   *for Justice v. Civil Serv. Com*., 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. W. Publ'g*

18   *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (same).

19          Rule 23(e) requires judicial approval of any class action settlement. This Motion

20   for preliminary approval of the Settlement is the first step, whereby the parties need only

21   to "provide the court with information sufficient to enable it to determine whether to give

22   notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Giving notice of the

23   Settlement to the Class is justified by providing information "showing that the court will

24   likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for

25   purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The second factor is

26   not applicable here because the Court has already certified the Class. ECF No. 76.

27          Rule 23(e)(2) lists criteria for evaluating the adequacy of a settlement, requiring a

28   review of the likelihood that: (a) the class representative and class counsel have adequately

represented the class; (b) the proposed settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate, taking into account: (i) the costs, risks and delays of trial and appeal; (ii) effectiveness of any proposed method of distributing relief to the class; (iii) terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other. In addition, the Ninth Circuit considers the following factors, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As discussed below, the proposed Settlement readily satisfies the Rule 23(e)(2) factors, as well as the applicable Ninth Circuit factors. Accordingly, the Settlement should be preliminary approved, and notice (the Settlement Notice Program) should be sent to the Class should in advance of the Final Settlement Hearing.

## A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently and vigorously prosecuting the Action for more than three years. These continuous unflagging efforts on behalf of the Class unquestionably satisfy the requirements of Rule 23(e)(2)(A); *see Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *18 (N.D. Cal. Dec. 17, 2018) (reiterating, in finding Rule 23(e)(2)(A) satisfied for purposes of finally approving settlement, that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation").

Prior to, and over the course of the Action, Lead Counsel carefully evaluated the strengths and weaknesses of Lead Plaintiff's claims and Defendants' defenses and developed a deep understanding of the merits of those claims and defenses. Lead Counsel,

among other things: (a) investigated potential claims against Defendants before filing pleadings; (b) prepared the initial complaint and the amended Complaint and successfully opposed Defendants' motion to dismiss; (c) conducted extensive discovery, including (i) serving document requests, interrogatories, and requests for admission, (ii) meeting and conferring with Defendants on the scope of production, (iii) obtaining production of documents, written discovery, and over 40 deposition transcripts (and their exhibits) from the now-settled *Peterson v. Sanghi*, No. 18-cv-2000 (C.D. Cal.) case; (d) retained experts to opine on market efficiency, damages, loss causation, and certain issues related to liability; and (e) analyzed Defendants' mediation papers.

## B.   The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations

Rule 23(e)(2)(B) asks whether a proposed settlement is procedurally adequate, *i.e.*, whether it was negotiated at arm's length. Courts have long recognized the initial presumption that a settlement is fair and reasonable when the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794, at *15 (N.D. Cal. June 30, 2007). The use of an experienced mediator is an "important factor" supporting a finding that this requirement is satisfied. *See In re Banc of Cal. Sec. Litig.*, No. SACV 17-00118 AG (DFMx), 2019 U.S. Dist. LEXIS 209386, at *6 (C.D. Cal. Dec. 4, 2019); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886, at *23 (N.D. Cal. July 22, 2019).

Here, the mediation process was overseen by a highly regarded and experienced mediator. Lead Counsel and Defendants' Counsel also prepared and presented the mediator with comprehensive submissions concerning their respective views on the merits of the Litigation, along with supporting evidence obtained through discovery. Further, the Settlement was the result of a mediator's proposal.

Additionally, "[a] settlement is presumed to be fair if reached in arm's-length negotiations after relevant discovery has taken place." *Pataky v. Brigantine, Inc.*, No. 17-cv-00352-GPC-AGS, 2018 U.S. Dist. LEXIS 101663, at *8 (S.D. Cal. June 18, 2018); *In*

*re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41983, at *17 (C.D. Cal. Sep. 12, 2005) ("[a] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced counsel after meaningful discovery"). Here, the Parties reached an agreement to settle only after rigorous and lengthy discovery. The suit was filed over three years ago and more than 180,000 documents were produced during discovery. Depositions of both fact and expert witnesses have been taken over the course of the Litigation. There is no doubt that at the time the Settlement was reached, Lead Plaintiff and Lead Counsel had ample opportunity to evaluate the strengths and weaknesses in the case. Plaintiff's Counsel, who have extensive experience litigating complex securities class actions, were armed with extensive information generated through over three years of litigation at the time they entered into the Settlement with the assistance of an experienced mediator.

## C.  The Relief Provided by the Settlement Is Adequate

The $9 million recovery presents an excellent result for the Class. The benefits conferred on the Class by the Settlement far outweigh the risks, delay, and considerable costs of further litigation. Accordingly, the relief provided by the Settlement is adequate and supports preliminary approval.

### 1.  The Cost, Risks and Delay of Trial and Appeal Support Approval of the Settlement

The proposed Settlement reflects the inherent risks, costs and delay associated with this complex class action. Given the risks of continued litigation and the time and expense that would be incurred to prosecute the case through trial and appeals, the Settlement Amount is a meaningful recovery that is in the Class's best interests.

Though Lead Plaintiff and Lead Counsel believe they could have succeeded in establishing each of the elements of the alleged claims, Lead Plaintiff would be required to prove all elements of his claims to prevail, while Defendants need only succeed on one defense to potentially defeat the entire action. Thus, there is no guarantee that the Class would prevail, and even if they did, how the Court's rulings on Defendants' expected

motion for summary judgment and complex expert testimony matters would affect alleged damages, or how the case might be presented to a jury. Even if Lead Plaintiff succeeded at summary judgment and trial, Defendants would almost certainly file an appeal, which could further extend the lawsuit for years, and risk reversal of the verdict.

Here, Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, and/or omissions alleged in the Litigation. Defendants also have denied and continue to deny the allegations that Lead Plaintiff or Class Members have suffered damage or were otherwise harmed by the conduct alleged in the Litigation. Defendants deny that the 13 statements remaining in the case following the Court's March 11, 2020 Order granting in part and denying in part Defendants' motion to dismiss were false or misleading or made with scienter. Among other arguments, Defendants have argued that the remaining statements consist largely of Microchip's repeating Microsemi's historical financial results, which were audited by PricewaterhouseCoopers LLP and were never subject to any adjustment or restatement.

The Settlement is reasonable and is well within the range of possible approval, as it provides Class Members, whose claims have been pending since 2018, with a prompt and substantial tangible recovery.[3] The $9 million Settlement Amount represents approximately 6.5% of the Class's alleged *maximum* estimated aggregate damages ($138.2 million) as calculated by Plaintiff's damages expert, assuming, *arguendo*, (i) Lead Plaintiff was able to prove every aspect of his claims on liability, (ii) Lead Plaintiff's

---

[3] The $9 million Settlement Amount also represents an excellent result when compared to recoveries in similar cases. According to Cornerstone Research, in 2020, the median settlement as a percentage of estimated damages in Rule 10b-5 class actions involving damages between $75 million and $149 million was 5.8%. *See  Securities Class Action Settlements - 2020 Review and Analysis* at 6, Figure 5 (Cornerstone Research 2020), available at www.cornerstone.com/wp-content/uploads/2021/12/Securities-Class-Action-Settlements-2020-Review-and-Analysis.pdf. According to NERA, in 2021, the median ratio of settlements to investor losses in the $100-199 million range was 2.8%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* at 25, Figure 21 (NERA Jan. 25, 2022), available at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y.html.

damages model was accepted by the jury in full, and (iii) after a judgment in favor Lead Plaintiff and the Class, *all* damaged Class Members filed claims on all shares purchased during the Class Period.  Defendants strenuously contested not only liability, but also contested, among other things, Lead Plaintiff's loss causation and damages theories. Moreover, any judgment after trials and appeals would be subject to a claims process, which itself could be contested by Defendants, if the case was not settled.  If not for the Settlement, there was a significant risk that there could be no recovery or a recovery significantly less than $9 million.   Accordingly, the $9 million risk-free Settlement represents a significantly higher percentage than 6.5% of the range of potential provable damages, after summary judgment and pre-trial motions, after trial, after appeals, and then still subject to a claims process.

### 2.   The Proposed Method for Distributing Relief Is Effective

The Settlement Notice Program and claims administration process are effective. As discussed below (*see* § V), the Settlement Notice Program includes a Postcard Settlement Notice to be mailed to potential Class Members, a Summary Settlement Notice to be published over a national wire service, and a Settlement Website where copies of the Longform Settlement Notice and Claim Form can be downloaded.  Stipulation, ¶ 6.3.

The Settlement will be effectuated with the assistance of the Claims Administrator. The Claims Administrator will employ a well-established protocol for the processing of claims in a securities class action. Potential class members will submit, in paper form, a Proof of Claim and Release, in accordance with the instructions for the submission of such Proof of Claim and Release and supported by such documents as are designated therein and in the Longform Settlement Notice. *Id.*, ¶ 8.3(a). The Proof of Claim and Release must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Postcard Settlement Notice, Summary Settlement Notice, and Longform Settlement Notice. *Id.*, ¶ 8.3(b). Based on the information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to participate (whether they are an Authorized Claimant) and calculate each Authorized Claimant's share of the Net

Settlement Fund based on the Court-approved Plan of Allocation. *Id.*, ¶ 8.3(c). Claimants will be notified of any defects or conditions of ineligibility and be given the chance to remedy any curable deficiencies and to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id.*, ¶ 8.3 (d).

After the Settlement reaches its Effective Date, the passing of all applicable deadlines, and the completion of the Claims Administrator's work calculating the Authorized Claimants' claims, Lead Plaintiff will move this Court for an order allowing distribution of the Net Settlement Fund to Authorized Claimants. *Id.*, ¶ 8.5. If there is any balance remaining in the Net Settlement Fund six (6) months after the initial distribution, the Claims Administrator shall, if feasible and economical, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. The redistribution process is explained in the Stipulation. *Id.*, ¶ 8.12. To facilitate an orderly distribution of the Net Settlement Fund, checks issued to Authorized Claimants will become void six months after they are issued. *Id.*

### 3.   The Anticipated Attorneys' Fees and Expenses Are Reasonable

Rule 23(e)(2)(C)(iii) addresses the terms of any proposed award of attorney's fees. Lead Counsel intends to request attorneys' fees of 25% of the Settlement Amount and litigation expenses of no more than $800,000. Class Representative will also ask the Court for an award, not to exceed $15,000, for his service on behalf of the Class or pursuant to 15 U.S.C. § 78u-4(a)(4) of his reasonable costs and expenses (including lost wages) directly relating to the representation of the Class.

A fee request of 25%, reflecting a considerable discount to counsel's lodestar, is in line with the "benchmark" within the Ninth Circuit, and is consistent with other settlements approved therein. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894 (9th Cir. 2017) (upholding fee award of 25% in $75 million settlement); *Vega v. Weatherford U.S., Ltd. P'ship*, No. 1:14-cv-01790-JLT, 2016 U.S. Dist. LEXIS 169448, at *31 (E.D. Cal. Dec. 7, 2016) ("In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 30% of the total settlement value, with 25% considered the benchmark."); *Wood*

*v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 U.S. Dist. LEXIS 140975, at *18-19 (D. Ariz. Sep. 28, 2009) (stating a fee of 30% of the settlement fund "is well within the range routinely approved in such cases"); *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sep. 12, 2005) (granting requested fee of 25% of $150 million settlement).

### 4. <u>Settlement Class Members Are Treated Equitably Relative to One Another</u>

Rule 23(e)(2)(D) asks whether the proposal treats class members equitably relative to each other. Drafted based on the damages analysis performed by Lead Plaintiff's damages expert, the Plan of Allocation is fair, reasonable, and adequate; it does not treat Lead Plaintiff or any other Class Member preferentially. *See In re Zynga Sec. Litig.*, No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728, at *37 (N.D. Cal. Oct. 27, 2015)

Specifically, pursuant to the Plan of Allocation, each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution from the Net Settlement Fund based on the Authorized Claimant's net losses, and Lead Plaintiff will be subject to the same formula for distribution of the Settlement as other Class Members. *See Ciuffitelli v. Deloitte & Touche Lp*, No. 3:16-cv-00580-AC, 2019 U.S. Dist. LEXIS 61386, at *63-64 (D. Or. Mar. 19, 2019) ("As noted above, the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based of the Settlement Fund based on their net losses. The lack of preferential treatment for Plaintiffs weighs in favor of preliminary approval.").

### D. <u>The Remaining Ninth Circuit Factors Support Preliminary Approval of the Settlement</u>

#### 1. <u>Extent of Discovery Completed and Stage of Proceedings at Which A Settlement Was Achieved</u>

The extent of discovery completed and the stage of the proceedings also support preliminary approval. The decision to enter into the Settlement was based on an understanding of the strengths and weaknesses of the Class' claims and Defendants' defenses. At the time the Settlement was reached, all fact discovery was complete and

comprehensive expert discovery was nearly complete. There can be no question that Lead Plaintiff and Lead Counsel were able to knowledgably evaluate the Settlement. *See Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2021 U.S. Dist. LEXIS 6030, at *13-14 (C.D. Cal. Jan. 4, 2021) (finding the extent of discovery completed and the stage of the proceedings weighs in favor of preliminary approval because the case "was initiated on September 15, 2017 and has survived a motion to dismiss" and "the parties reached a settlement after close of fact discovery").

### 2.   Risk of Maintaining Class Action Status Through Trial

Lead Counsel believes maintaining class action status through trial was likely. Nevertheless, Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits, meaning that the Defendants could have moved to decertify the Class or shorten the Class Period up until the time the jury reached a verdict. *See Rodriguez*, 563 F.3d at 966 ("A district court may decertify a class at any time."). Indeed, Defendants, in their response to Plaintiff's class certification motion, specifically reserved their right to move for decertification.

### 3.   The Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *See Hefler*, 2018 U.S. Dist. LEXIS 213045, at *25 (stating in granting the plaintiff's motion for preliminary approval, the court also considers "the experience and views of counsel"). Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* ECF No. 16-1(D). The Court also considers "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026. That counsel advocate in favor of this Settlement weighs in favor of its approval. *Hefler*, 2018 U.S. Dist. LEXIS 213045, at *25.

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied. The Settlement is fair, adequate and reasonable, and meets each of the applicable factors such that notice of the Settlement should be sent to the Class.

## V.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA REQUIREMENTS

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Further, Rule 23(e)(1)(B) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2)…" Fed. R Civ. P. 23(e)(1)(B). Courts have held that proposed notice documents must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012); *Rodriguez*, 563 F.3d at 962.

Here, in order to limit costs expended from the Settlement Fund, Lead Counsel proposes to provide Class Members notice through: (i) mailing of a Postcard Settlement Notice, addressed to each Class Member or Nominee who was previously mailed or forwarded the Postcard Class Notice or can otherwise be identified by reasonable effort; (ii) publication of the Summary Settlement Notice over *PR Newswire* or a similar wire service with similar reach; and (iii) a Settlement Website, from which copies of the Longform Settlement Notice, Claim Form, and relevant Court and Settlement documents, including the Stipulation and this motion, can be downloaded. Stipulation, ¶ 6.3.

The proposed Postcard Settlement Notice and Summary Settlement Notice contain summaries of the terms of the Settlement and instructions for submitting a Claim Form or an objection to the Settlement, and will direct Class Members to the Settlement Website and Longform Settlement Notice for further information. The Longform Settlement Notice and Proof of Claim and Release form will also be available by mail or email to Class Members upon request to the Claims Administrator.

The proposed Longform Settlement Notice provides detailed information concerning the topics addressed in the Postcard Settlement Notice and Summary Settlement Notice, including (a) the formula used to calculate payments to Class Members, and a description of the proposed Plan of Allocation; (b) instructions, requirements, and

deadlines for Objections to the Settlement, including that Objections must be mailed to a specified address and received by the deadline; (c) Class Members' right to appear at the Final Settlement Hearing in person or through an attorney, and the requirements necessary to do so; and (d) information required by the PSLRA, including (i) the average per share amount of the Settlement Fund expected to be distributed to the Settlement Class, (ii) the amount of Attorneys' Fees and Expenses to be requested, in total and on an average per-share basis, and a brief explanation supporting the fees and costs sought; (iii) contact information for Lead Counsel; and (iv) "a brief statement explaining the reasons why the parties are proposing the settlement." *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F)

The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA, and due process. *Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 U.S. Dist. LEXIS 181055, at *30-31 (S.D. Cal. Oct. 22, 2018) (finding the procedures for notice, including emailing and mailing postcard notice, as well as publishing a long form notice on a settlement website, satisfied Rule 23); *Abante Rooter & Plumbing v. Pivotal Payments*, No. 3:16-cv-05486-JCS, 2018 U.S. Dist. LEXIS 232054 (N.D. Cal. Oct. 15, 2018), at *9-16 (finding notice sufficient where settling parties mailed postcard notice, established a settlement website with a long form notice, and provided a toll-free number for class members to inquire about the settlement).

## VI. THE COURT SHOULD ACCEPT ALL REQUESTS FOR EXCLUSION

The Notice Administrator received a total of 31 requests for exclusion, one of which was subsequently withdrawn. 29 of the remaining 30 requests were postmarked on or before November 2, 2021. One request was postmarked after November 2, 2021 and was submitted by the executor and trustee of a Class member who passed away in March 2021, and who stated she did not receive notice until after the exclusion deadline.

Of the 30 requests for exclusion received and not withdrawn, five Class members submitted the required documentation for the number of Microchip common stock shares transacted during the Class Period, totaling 171 shares. 29 requests were from individuals or joint trustees. The remaining request was filed by a liquidator of a bank, which did not

provide trading details of Microchip common stock during the Class Period. ECF No. 91, ¶¶ 6-10. The Notice Administrator sent a letter to each person who requested exclusion who did not comply with the requirements of the Longform Class Notice, and told them that failure to provide the required information may result in the Court rejecting the requests for exclusion. A list of requests for exclusion received and not subsequently withdrawn is attached to the Stipulation as Annex 1 to Exhibit A.

Lead Counsel requests that all 30 requests for exclusion that were received and not subsequently withdrawn be accepted by the Court. While one request was postmarked after the deadline, the stated reasons evidence excusable delay. Further, while 25 of the requests did not include trading details of Microchip common stock during the Class Period, the requests for exclusion should be honored. *See, e.g., Facciola v. Greenberg Traurig LLP,* No. CV-10-1025-PHX-FJM, 2012 U.S. Dist. LEXIS 191695, at *6 (D. Ariz. Aug. 31, 2012) ("We will not invalidate an exclusion request for failure to strictly comply with the class notice opt out requirements. Such a formalistic approach implicates an individual's due process rights to opt out."). Defendants take no position as to whether the Court should accept the 25 requests for exclusion that did not include all required information.

## VII.   PROPOSED SCHEDULE FOR FINAL APPROVAL

Lead Plaintiff respectfully submits the following proposed schedule for the Court's review and approval, which summarizes the deadlines to be set in the proposed Preliminary Approval Order:

| Event | Date |
|---|---|
| Last day to mail Postcard Settlement Notice ("Settlement Notice Date") | 21 days after entry of the Preliminary Approval Order |
| Last day to publish the Longform Settlement Notice and Proof of Claim and Release Form on the Settlement Website | Settlement Notice Date |
| Last day to publish Summary Settlement Notice | 7 days after the Settlement Notice Date |

| Event | Date |
|---|---|
| Last day for filing and serving of motion(s) in support of final approval of the Settlement and Plan of Allocation, and the applications for an award of Attorneys' Fees and Expenses and the Class Representative Service Award | Filed and served 35 days before the Final Settlement Hearing |
| Last day for objections to final approval of the Settlement and the Plan of Allocation, or the applications for Attorneys' Fees and Expenses and the Class Representative Service Award | Received no later than 21 days before the Final Settlement Hearing |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Attorneys' Fees and Expenses and the Class Representative Service Award | Filed and served later than 7 days before the Final Settlement Hearing |
| Final Settlement Hearing | 111 days after entry of the Preliminary Approval Order or at the Court's earliest convenience thereafter |
| Last Day for Class Members to submit a Claim Form | Postmarked no later than 110 days after the Settlement Notice Date |

## VIII.  CONCLUSION

For each of the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the Motion and issue an Order in the Form of the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation.

Respectfully submitted,

Dated: March 7, 2022
Phoenix, Arizona

By:   _/s/ Andrew S. Friedman_
Andrew S. Friedman, Esq. (005425)
afriedman@bffb.com
Francis J. Balint, Jr. (007669)
fbalint@bffb.com
**BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100

1

2

*Attorneys for Lead Plaintiff and Court-Appointed Liaison Counsel for the Class*

3

Robert C. Finkel (Admitted *Pro Hac Vice*)
rfinkel@wolfpopper.com

4

Joshua W. Ruthizer (Admitted *Pro Hac Vice*)
jruthizer@wolfpopper.com

5

**WOLF POPPER LLP**

6

845 Third Avenue, 12th Floor

7

New York, New York 10022
Telephone: (212) 759-4600

8

9

*Attorneys for Lead Plaintiff and Court-Appointed Class Counsel for the Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28