1  Andrew S. Friedman (005425)
   afriedman@bffb.com
2  Francis J. Balint, Jr. (007669)
   fbalint@bffb.com
3  **BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.**
4  2325 E. Camelback Road, Suite 300
   Phoenix, Arizona 85016
5  Telephone: (602) 274-1100
   *Attorneys for Lead Plaintiff and Court-Appointed Liaison Counsel to the Class*
6
7  Robert C. Finkel (*Admitted Pro Hac Vice*)
   rfinkel@wolfpopper.com
8  Joshua W. Ruthizer (*Admitted Pro Hac Vice*)
   jruthizer@wolfpopper.com
9  **WOLF POPPER LLP**
10 845 Third Avenue
   New York, NY 10022
11 Telephone: (212) 759-4600
   *Attorneys for Lead Plaintiff and Court-Appointed Class Counsel*
12

13                **UNITED STATES DISTRICT COURT**
14
                    **DISTRICT OF ARIZONA**
15

16 | | |
   |---|---|
17 | Ronald L. Jackson, as Trustee Under Agreement Dated 01/05/2012 by Ronald L. Jackson, Individually, and on Behalf of All Others Similarly Situated, | Case No. 2:18-cv-02914-ROS |
18 | | |
19 | | <u>CLASS ACTION</u> |
   | Plaintiff, | **LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND INCORPORATED MEMORANDUM OF LAW** |
20 | | |
21 | v. | |
22 | | |
   | Microchip Technology, Inc.; Steven Sanghi; Ganesh Moorthy; And J. Eric Bjornholt, | |
23 | | Hearing Date: June 22, 2022 |
24 | | Hearing Time: 11:00 a.m. |
   | Defendants. | Courtroom: 604 |
25 | | Judge: Hon. Roslyn O. Silver |
26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

I.    INTRODUCTION ....................................................................................... 1

II.   Factual and Procedural Background ........................................................... 2

   A. Summary of the Allegations................................................................... 2

   B. Procedural History................................................................................. 5

   C. Class Certification, Class Notice, and Requests for Exclusion.............. 6

   D. Settlement Negotiations ......................................................................... 6

   E. The Terms of the Settlement ................................................................. 6

III.  ARGUMENT .............................................................................................. 7

   A. The Proposed Settlement Warrants the Court's Final Approval............ 7

      1.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Class.... 8

      2.   The Settlement Is the Result of Good Faith, Arm's-Length Negotiations...... 9

      3.   The Relief Provided by the Settlement Is Adequate ....................... 9

         a.   The Cost, Risks and Delay Support Approval of the Settlement ............ 9

         b.   The Proposed Method for Distributing Relief Is Effective ................... 12

         c.   The Anticipated Attorneys' Fees and Expenses Are Reasonable.......... 13

      4.   Class Members Are Treated Equitably Relative to One Another ................ 13

      5.   The Remaining Ninth Circuit Factors Support Final Approval ................... 13

         a.   Extent of Discovery Completed and Stage of Proceedings at Which A Settlement Was Achieved........................................................... 13

         b.   Risk of Maintaining Class Action Status throughout Trial ................... 14

         c.   The Experience and Views of Counsel.................................................... 15

         d.   Reaction of the Class .............................................................................. 15

   B. The Plan of Allocation Should be Finally Approved........................... 16

   C. Notice to the Class Satisfied Rule 23 and Due Process ....................... 16

IV.  CONCLUSION........................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Abante Rooter & Plumbing v. Pivotal Payments,*
No. 3:16-cv-05486-JCS,
2018 U.S. Dist. LEXIS 232054 (N.D. Cal. Oct. 15, 2018) ............................ 17

*Adams v. Inter-Con Sec. Sys., Inc.,*
No. C-06-5428 MHP,
2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) .............................. 9

*In re Amgen Sec. Litig.,*
No. CV 7-2536 PSG (PLAx),
2016 U.S. Dist. LEXIS 148577 (C.D. Cal. Oct. 25, 2016) .................... 14, 16

*In re Apollo Grp. Inc. Sec. Litig.,*
No. CV 04-2147-PHX-JAT,
2012 U.S. Dist. LEXIS 55622 (D. Ariz. Apr. 20, 2012) .............................. 15

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ....................................................................... 7

*Destefano v. Zynga, Inc.,*
No. 12-cv-04007-JSC,
2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ............................ 14

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ....................................................................... 8

*Hefler v. Wells Fargo & Co.,*
No. 16-cv- 05479-JST,
2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17, 2018) ........................... 9

*Lloyd v. Navy Fed. Credit Union,*
No. 17-cv-1280-BAS-RBB,
2018 U.S. Dist. LEXIS 181055 (S.D. Cal. Oct. 22, 2018) ........................... 17

*In re MGM Mirage Sec. Litig.,*
708 F. App'x 894 (9th Cir. 2017) ................................................................ 13

*In re NVIDIA Corp. Derivative Litig.,*
No. C-06-06110-SBA (JCS),
2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 19, 2008) ........................... 7

*Officers for Justice v. Civil Service Com.,*
688 F.2d 615 (9th Cir. 1982) ......................................................................... 8

*Reid v. I.C. Sys.,*
No. CV-12-2661-PHX-ROS,
2018 U.S. Dist. LEXIS 125663 (D. Ariz. July 27, 2018) ...................... 14, 15

*Rodriguez v. West Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ....................................................................... 14

*Roes v. SFBSC Mgmt., LLC,*
944 F.3d 1035 (9th Cir. 2019) ..................................................................... 17

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ......................................................................... 7

*In re Zynga Sec. Litig.*,
  No. 12-cv-04007-JSC,
  2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015) ........................................... 13

## **Statutes**

15 U.S.C. § 78u-4(a)(4) .......................................................................................... 16

15 U.S.C. § 78u-4(e) ............................................................................................... 16

## **Rules**

Fed. R. Civ. P. 23(e)(2) .......................................................................................... 7

## I.     **INTRODUCTION**

In this Court's March 11, 2022 Preliminary Approval Order (ECF No. 95), the Court provisionally determined that the proposed $9 million cash payment to settle this securities class action (the "Settlement") was entered into at arm's-length by experienced counsel after extensive, informed, and non-collusive negotiations, and that its terms fall within the range of reasonableness. The Court therefore directed distribution of the approved forms of Settlement Notice to the Class, set a schedule for Class Members to submit objections to the Settlement and Plan of Allocation, and Plaintiff's Counsel request for attorneys' fess and reimbursement of expenses, and set a June 22, 2022 final approval hearing.[1]

Lead Plaintiff and Class Representative Ronald L. Jackson now respectfully moves this Court for final approval of the Settlement and for final approval of the proposed Plan of Allocation of the Settlement Fund (the "Motion" or the "Final Approval Motion").[2] Lead Plaintiff respectfully submits that there has been no change in circumstances since he filed his motion for preliminary approval (ECF No. 94), which the Court granted.   The Settlement, which will provide the Class with a substantial immediate cash benefit, remains, and is, fair, reasonable, and adequate.   Moreover, the Plan of Allocation treats all Class Members equitably based on a Recognized Loss formula that mirrors Plaintiff's expert's damage analysis.   Because all Class Members who submit Claim Forms accepted by the Claims Administrator will receive their *pro rata* share of the Settlement Fund in proportion to their Recognized Loss, the Plan of Allocation should also be finally approved.

The Class would have faced substantial risk if the case had gone to summary

---

[1] The Settlement terms are memorialized in the Stipulation and Agreement of Settlement, filed on March 7, 2022 (ECF No. 94-1, Ex. 1 ("Stipulation")). Unless otherwise defined herein, all capitalized terms in this memorandum have the same meaning as those terms are defined in the Stipulation.

[2] Contemporaneous with this filing, Lead Plaintiff has filed a separate motion in support of his request for the award of attorneys' fees and reimbursement of expenses, and for compensation for his participation in this lawsuit.   *See* Declaration of Ronald L. Jackson in Support of Lead Plaintiff's Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation and (2) An Award of Attorneys' Fees and Reimbursement of Litigation Expenses, dated May 16, 2022, and attached to the Ruthizer Declaration (defined below) as Exhibit 4 ("Jackson Declaration").

judgment, trial, appeals, and a claims process. Among other things, Lead Counsel anticipated that Defendants would raise several significant arguments at summary judgment and trial, including that (a) Defendants were seasoned and successful business executives who caused Microchip to acquire Microsemi Corporation ("Microsemi") for over $10 billion in cash and assumption of debt and had a good faith belief that the Merger was in the best interests of Microchip shareholders; (b) that notwithstanding Microchip experiencing a quarter or more of reduced sales and cash flow attributable to Microsemi's alleged channel stuffing, the Merger was ultimately successful for Microchip; (c) that Defendants did not know of Microsemi's inventory practices when they made the majority of the alleged false statements, and disclosed the truth on May 31, 2018, with no negative stock price movement; and (d) that Microchip's stock decline on August 10, 2018 had nothing to do with the Microsemi Merger, and everything to do with other confounding issues relating to uncertainly regarding Trump Administration tariffs on Chinese goods and other developments. On balance, for these and other risk factors addressed further below, Lead Plaintiff endorses the Settlement as an excellent recovery and respectfully requests that the Court grant the Motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[3]

### A.   Summary of the Allegations

The Amended Complaint (ECF No. 32) alleges that Defendants defrauded investors, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and U.S. Securities & Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, in connection with Microchip's acquisition of Microsemi, which was announced on March 1, 2018 and closed on May 29, 2018. Among other things, Lead Plaintiff alleges that Defendants failed to disclose material information concerning sales and inventory practices

---

[3] Lead Plaintiff includes here a summary of the relevant factual and procedural background of the Litigation. For a more detailed recitation of the facts and history of the Litigation, Lead Plaintiff respectfully refers the Court to the Declaration of Joshua W. Ruthizer, Esq., in Support of Lead Plaintiff's Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation and (2) An Award of Attorneys' Fees and Litigation Expenses, dated May 18, 2022 and filed herewith ("Ruthizer Declaration").

at Microsemi that Defendants believed to be channel stuffing, and that stopping the channel stuffing and conforming Microsemi's practices to Microchip's business model would result not only in reduced Microsemi distributor inventory, but also lower revenue for the combined company than Defendants informed the public would result from the Merger.

Historically, Generally Accepted Accounting Principles ("GAAP") allowed revenue to be reported either on a sell-in basis (when products were sold to distributors) or a sell-through basis (when products were sold to end users). Prior to the Class Period, the Financial Accounting Standards Board changed GAAP to require companies to report GAAP revenue only on a sell-in basis. Defendants managed Microchip's business on a sell-through basis, a model Defendants professed to reflect true end user demand. Prior to the Class Period, Microchip reported GAAP and non-GAAP revenue on a sell-through basis. On May 8, 2018, during the Class Period, Defendants informed the public that starting with the quarter ended June 30, 2018 (starting April 1, 2018), Microchip would adopt the new GAAP requirements to report GAAP revenue on sell-in basis, but that it would also report a non-GAAP sell-through revenue figure and continue to manage Microchip's business on a sell-through basis. Microsemi reported GAAP revenue on a sell-in basis and did not report revenue on a "sell-through" basis. Ruthizer Decl. ¶¶25-27.

On March 1, 2018, Defendants held an Analyst Day, where (after the close of the market) they announced and discussed the Merger. At the Analyst Day, Defendants, among other things, presented a "Highly Profitable Financial Model" slide that combined Microsemi's sell-in and Microchip's sell-through December 2017 quarterly revenue on an annualized basis. Although Microsemi had not reported revenue on a sell-through basis, the Highly Profitable Financial Model slide reported Microsemi's fourth quarter sell-in revenue as "non-GAAP," which (Lead Plaintiff alleged) was understood by investors to equate to Microsemi's sell-through revenue. *Id.* ¶¶207-209. Defendants repeated the Highly Profitable Financial Model slide in investor presentations on May 10, 2018 and June 4, 2018. Lead Plaintiff alleges that by adopting and reporting Microsemi's reported sell-in revenue, presenting it as "non-GAAP," and combining it with Microchip's own sell-

through revenue, Microchip was stating that Microsemi's figures had not been manipulated through channel stuffing and was reflective of actual end user demand. *Id.* ¶¶292-293.

On May 21, 2018, Defendant J. Eric Bjornholt (Microchip's then CFO) and Microchip filed a Form 8-K with the SEC related to Microchip's intention to issue up to $2 billion of senior secured notes. The Form 8-K contained (a) a list of certain risk factors related to the acquisition of Microsemi, and (b) an unaudited pro forma condensed combined statement of income for the year ended March 31, 2018, prepared as if the merger had closed on April 1, 2018, and comprised of Microchip's reported sell-through revenues for the fiscal year ended March 31, 2018 and Microsemi's reported sell-in revenue for the four fiscal quarters ended April 1, 2018. Lead Plaintiff alleges that Defendants failed to disclose known information concerning Microsemi's channel stuffing in the Form 8-K, and (just as they had with the Highly Profitable Financial Model Slide) misleadingly combined Microchip's sell-through and Microsemi's sell-in yearly net sales revenues to arrive at a sum revenue number for the combined companies. *Id.* ¶¶306-16.

On May 31, 2018, Defendants held an investor conference call to discuss the closing of the Merger. On that conference call, among other things, Sanghi reported that Microchip had "assessed the non-GAAP revenue that Microsemi expected to ship in the quarter under our clock," and that going forward, "I think the GAAP [sell-in] and non-GAAP [sell-through] will be about the same because there would be just no incentive to put any more parts into distribution than is required," so revenue "would be in the similar range as we have guided, $160 million to $180 million even if you look at by GAAP, give or take some." *Id.* ¶¶335-36. Lead Plaintiff alleges that Defendants' statements on the May 31, 2018 conference call were misleading because, among other reasons, Defendants failed to disclose the known magnitude of Microsemi's channel stuffing and negative effects that correcting that channel stuffing would have on the combined companies' cash flow and debt leverage. *Id.* ¶¶339-340.

On August 9, 2018, Defendants acknowledged that Microsemi's practices had led to the over-distribution of inventory into the distribution channel, and current and future

revenue and cash flow would be significantly lower than previously represented until Microsemi's inventory and sales practices conformed to Microchip's business. *Id.* ¶¶372-87. Defendants also disclosed that as a result of the excess inventory, Microchip would sell less Microsemi product to reduce distribution chain inventory, and as a result would have $110 million less net free cash flow and higher debt leverage (5.0x v. 4.7x)*. Id.* ¶¶15-16.[4]

On August 10, 2018, as a result of these and other disclosures, Microchip common stock fell $10.67, from a closing price of $98.08 per share on August 9, 2018 to a closing price of $87.41 per share on August 10, 2018, or 10.9%. *Id.* ¶394.

### B.  Procedural History

On September 14, 2018, Jackson filed an initial complaint alleging securities fraud. Jackson subsequently filed a motion for appointment as Lead Plaintiff in the Litigation, and Judge Tuchi granted that Motion. ECF Nos. 15, 24.[5]  On February 22, 2019, Lead Plaintiff filed the Amended Complaint alleging securities fraud. ECF No. 32.  Thereafter, Defendants moved to dismiss and to strike certain portions of the Amended Complaint, which Lead Plaintiff opposed. ECF Nos. 36-39. On March 11, 2020, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 44. The Court denied the motion with respect to 13 of the 53 alleged false statements, relating the Highly Profitable Financial Model, to the combined *pro forma* financial statements, and to statements on the May 31, 2018 conference call summarized above. The Court dismissed claims premised on the remaining false statements or omissions, finding that they were forward looking and protected by the PSLRA's safe harbor, non-actionable puffery, or of a general nature and not misleading, and therefore not actionable under the Exchange Act. *Id.* at 9-16.

---

[4] Also on August 9, 2018, Defendants announced that, in addition to the "headwinds" Microchip was experiencing relating to the Microsemi Merger, "there are several small factors that are starting to impact the business. Stand-alone, none of them will be material, but all of them together are causing us to provide a cautious guidance for fiscal second quarter of 2019." Ruthizer Decl. ¶122. These factors included trade tariffs with China, the decline in the price of bitcoin, and longer lead times for certain products that used Microchip chips.

[5] This Litigation was originally assigned to Judge John Tuchi. On April 22, 2021, the Action was re-assigned to Judge Roslyn O. Silver. ECF Nos. 8, 77.

C.  **Class Certification, Class Notice, and Requests for Exclusion**

The Court, in a February 22, 2021 Order (ECF No. 76) certified a Class of:

all persons who purchased or otherwise acquired [Microchip] common stock on a U.S. open market during the [C]lass [P]eriod March 2, 2018 through August 9, 2018, both dates inclusive[.] Excluded from the Class are [Defendants] in this action,… the officers and directors of the Company during the Class Period (the "Excluded D&Os"), members of Defendants' and Excluded D&Os' immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants or the Excluded D&Os have or had a controlling interest.

ECF No. 76.  On August 10, 2021, the Court directed Lead Plaintiff to issue notice of the pendency of this class action to potential Class Members pursuant to the terms of the Parties' Stipulation Regarding Class Notice Procedures (ECF Nos. 80, 81). Notice was issued pursuant to the Court's Order, and in response a total of 30 requests for exclusion were received and not subsequently withdrawn. In the Preliminary Approval Order, the Court accepted all 30 requests for exclusion, and excluded from the Class the persons who submitted those requests and the legal representatives, heirs, successors, assigns, or affiliates of any excluded person ("Excluded Class Members"). A list of Excluded Class Members is attached to the Stipulation (ECF No. 94-1 at 58-59 of 95).

D.  **Settlement Negotiations**

The Settlement is the product of extensive arm's length negotiations between the Parties with the assistance of Robert Meyer, Esq. of JAMS, an experienced and highly regarded mediator. Ruthizer Decl. ¶8, 98-100. The Parties conducted a full day virtual mediation on January 25, 2022 with Mr. Meyer. In advance of the meditation, the Parties prepared and exchanged detailed mediation statements. *Id.* At the conclusion of the mediation, Mr. Meyer made a mediator's proposal to settle the Litigation for $9 million, and both parties accepted. *Id.*

E.  **The Terms of the Settlement**

Pursuant to the Stipulation, Defendants paid $9 million in cash to the Escrow Account on April 6, 2022.  ECF No. 94-1 (Stipulation) ¶¶1.66, 3.1. Once the Court-approved Administrative and Notice Costs, Taxes and Tax Expenses, Attorney's Fees and Expenses, and Class Representative's Service Award are deducted from the Settlement

Fund, the remaining balance (*i.e.*, the Net Settlement Fund) will be distributed (upon a Court order) to Authorized Claimants pursuant to the Stipulation and Plan of Allocation. *Id.* ¶8.2. There will be no reversion to Defendants of any portion of the Settlement Fund.

Once the Settlement becomes final, Class Members will release the Released Claims in exchange for the Settlement Amount. The Released Claims are only claims that both

> ... arise out of, are based on, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action, ***and*** (b) arise out of, are based on, or relate to the purchase, acquisition, holding, disposition, or sale of any shares of Microchip stock during the Class Period. [*Id.* ¶1.57.]

## III.   ARGUMENT

### A.   The Proposed Settlement Warrants the Court's Final Approval

While the approval of the proposed Stipulation is committed to the sound discretion of the Court, settlements of complex class actions prior to trial are strongly favored. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Federal courts encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Id.* (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 U.S. Dist. LEXIS 117351, at *6-7 (N.D. Cal. Dec. 19, 2008) (same).

Rule 23(e)(2) instructs that the adequacy of a settlement depends on whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  In addition, the Ninth Circuit considers the following, some of which overlap with Rule 23(e)(2):

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The relative importance of any particular factor depends on "the unique facts…[of] each individual case." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982).

As discussed below, the proposed Settlement readily satisfies Rule 23(e)(2) and the applicable Ninth Circuit factors. Accordingly, the Settlement should be approved.

### 1.   <u>Lead Plaintiff and Lead Counsel Have Adequately Represented the Class</u>

Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently and vigorously prosecuting the Action since September 2018.  Prior to, and over the course of the Action, Lead Counsel carefully evaluated the strengths and weaknesses of Lead Plaintiff's claims and Defendants' defenses and developed a deep understanding of the merits of those claims and defenses. Lead Counsel and Lead Plaintiff, among other things, (1) conducted an investigation of relevant facts and potential claims that could be asserted against the Defendants; (2) filed a Class Action Complaint (ECF No. 1); (3) filed a motion for appointment as Lead Plaintiff; (4) retained an outside investigative agency and filed an Amended Complaint (ECF No. 32); (5) successfully opposed Defendants' motion to dismiss; (6) successfully moved for class certification; (7) conducted discovery, including obtaining approximately 180,600 documents constituting approximately 2.22 million pages; (8) defended and took multiple fact and expert depositions; (9) served three expert reports on behalf of Lead Plaintiff and analyzing four expert reports served on behalf of Defendants; (10) prepared for, and participating in, a mediation with Robert Meyer, Esq. of JAMS, which followed the preparation of extensive mediation statements submitted and exchanged by the Parties; and (11) negotiated and drafted appropriate documentation of the Settlement, including the Stipulation and notice documents. Ruthizer Decl. ¶¶39-100.  These continuous unflagging efforts for the Class unquestionably satisfy the requirements of Rule 23(e)(2)(A); *see*

*Hefler v. Wells Fargo & Co.*, No. 16-cv- 05479-JST, 2018 U.S. Dist. LEXIS 213045, at *18 (N.D. Cal. Dec. 17, 2018) (in finding Rule 23(e)(2)(A) satisfied for purposes of finally approving settlement, reiterating that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation"). The Court previously found Lead Plaintiff and Lead Counsel adequate when it appointed them Class Representative and Class Counsel, respectively. *See* ECF No. 76.

### 2.   The Settlement Is the Result of Good Faith, Arm's-Length Negotiations

The Settlement resulted from a mediator's proposal following a day-long meditation before Robert Meyer, a highly regarded and experienced mediator. Before mediation, Lead Counsel and Defendants' Counsel prepared and presented the mediator with comprehensive submissions concerning their views of the case, along with supporting evidence obtained through discovery. As the Settlement clearly resulted from good faith, arm's-length negotiations, it is entitled to a presumption of fairness.[6]

### 3.   The Relief Provided by the Settlement Is Adequate

The $9 million recovery presents an excellent result. The Settlement's benefits to the Class far outweigh the considerable risks, delay, and costs of further litigation.

#### a.   The Cost, Risks and Delay Support Approval of the Settlement

The proposed Settlement reflects the inherent risks, costs and delay associated with this complex class action. Given the risks of continued litigation and the time and expense that would be incurred to prosecute the case through trial and appeals, the Settlement Amount is a meaningful recovery that is in the Class's best interests.

If this Litigation were to proceed, Defendants would almost certainly have moved for summary judgment. To succeed at summary judgment (and at trial), Lead Plaintiff would have to establish each element of a claim for violation of Section 10(b), notably, falsity, scienter, loss causation, and damages. Lead Counsel anticipated that at the summary judgment stage and at trial, Defendants would challenge all of these elements. *See* Ruthizer

---

[6] *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 U.S. Dist. LEXIS 83147, at *9 (N.D. Cal. Oct. 29, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.")."

9

Decl. ¶¶114-139. For example, Lead Counsel anticipated that Defendants would argue that:

- Their statements were factually correct because Microsemi's financial information used in the majority of the remaining False Statements was from Microsemi's publicly reported filings, which were audited by PricewaterhouseCoopers, and which have never been restated.

- Investors understood that the "Highly Profitable Financial Model" slide combining Microsemi's and Microchip's revenue figures did not amount to an endorsement of Microsemi's sales practices, and was thus not misleading.

- Lead Plaintiff failed to prove scienter as Defendants had the economic incentive to uncover channel stuffing practices before entering into a merger agreement (which is when the Class Period began), had no motivation to overpay for a company that suffered from channel stuffing problems, and have been vindicated about the overall wisdom of the Merger given the strong performance of Microchip common stock following the Class Period and Microsemi's integration into Microchip.

- Lead Plaintiff failed to prove loss causation and damages because all or a significant portion of the decline in Microchip's stock price on August 10, 2018 reflected investors' reaction to the additional factors Defendants disclosed that were causing Microchip to give cautious guidance (such as Trump Administration tariffs and the decline in the price of bitcoin), which were unrelated to the alleged fraud and/or had implications for the semiconductor industry more broadly.

- Lead Plaintiff's damage expert's method for calculating the amount of the August 10, 2018 decline in Microchip's stock that was related to Defendants' alleged false and misleading statements, and not related to the confounding factors, was unreliable and should be excluded on *Daubert* grounds, and Plaintiff's damages related to Defendants' alleged false and misleading statements is overstated.

Though Lead Plaintiff and Lead Counsel believe they could have succeeded in establishing each of the elements of their claims, and defeated these and other arguments raised by Defendants, they recognize that the Class would be required to prove all elements of their

claims to prevail, while Defendants need only succeed on one defense to potentially defeat the entire action at summary judgment and trial. Thus, there is no guarantee that the Class would prevail, and even if they did, how the Court's rulings on Defendants' expected motion for summary judgment, *Daubert* motions, and complex expert testimony matters would affect alleged damages, or how the case might be presented to a jury.  Even if Lead Plaintiff succeeded at summary judgment and trial, Defendants would almost certainly file an appeal, which could further extend the lawsuit for years, and risk reversal of the verdict.

The amount of the Settlement is also an excellent result.  Lead Plaintiff's damages expert, Prof. Steven Feinstein, estimated that if Plaintiff were able to prove every element of its claim at trial, the Class's alleged ***maximum*** estimated aggregate damages would be $138.2 million (assuming that substantially the entire stock price decline on August 10, 2018 was related to the alleged fraud). Ruthizer Decl. ¶131.  Accordingly, the $9,000,000 Settlement represents approximately 6.5% of the maximum recoverable damages for the Class. This is an outstanding result for Class Members given the riskiness of the Litigation.

Furthermore, the $138.2 million estimated damages figure assumes, *arguendo*, among other things, (i) Lead Plaintiff was able to prove every aspect of his claims on liability, (ii) Lead Plaintiff's damages model was accepted by the jury in full, and Defendants' alternative models were entirely rejected by the jury, and (iii) after a judgment for Lead Plaintiff, ***all*** Class Members filed claims on all shares purchased during the Class Period, and that ***none*** of Class Members' losses were set off by any relative gains. Had Defendants succeeded on any liability point or in convincing the jury or the Court to accept their damages model, then the recovery could have been significantly less or zero. Therefore, it is almost certain that actual damages after trial and appeals would be substantially less than the $138.2 million maximum recoverable damages estimate. Moreover, any judgment after trials and appeals would be subject to a claims process, which could be contested by Defendants, if the case were not settled. If not for the Settlement, then, was a significant risk that there could be no recovery or a recovery significantly less than $9 million.  Ruthizer Decl. ¶¶133-37.

1   Accordingly, the $9 million risk-free Settlement represents a significantly higher

2   percentage than 6.5% of the range of potential provable damages, after summary judgment

3   and pre-trial motions, after trial, after appeals, and then still subject to a claims process. *Id.*

4   The $9 million Settlement Amount also represents an excellent result when

5   compared to recoveries in similar cases. According to Cornerstone Research, in 2021, the

6   median settlement of a securities class action was $8.3 million and the median settlement

7   as a percentage of estimated damages in Rule 10b-5 class actions involving damages

8   between $75 million and $149 million was 7.4%.[7] Further, according to NERA, in 2021,

9   the median settlement value for all securities class actions, excluding merger objection

10  cases, settlements of over $1 billion and settlements for $0 to the class, was $8 million.[8]

11  These figures are fully in line with the $9 million Settlement here (even when compared to

12  the maximum damages assumption).  *Id.* ¶138.

13              **b.   The Proposed Method for Distributing Relief Is Effective**

14  The proposed Plan of Allocation and Settlement claims process follows a standard

15  process of established effectiveness.  Potential class members will submit a Proof of Claim

16  and Release, in accordance with the instructions in the Longform Settlement Notice. ECF

17  No. 94-1 (Stipulation) ¶8.3(a). The Proof of Claim and Release must be submitted or

18  postmarked by July 20, 2022, as specified in the Settlement Notice Program.

19  Based on the information provided by Claimants, the Claims Administrator will

20  determine their eligibility to participate (i.e., whether they are an Authorized Claimant) and

21  calculate each Authorized Claimant's share of the Net Settlement Fund based on the Court-

22  approved Plan of Allocation. *Id.* ¶8.3(c). Claimants will be notified of any defects or

23  conditions of ineligibility and be given the chance to remedy them and/or contest rejection.

24

---

25  [7] *See* Securities Class Action Settlements - 2021 Review and Analysis at 4 and 6, Figure 5
26  (Cornerstone Research 2022), available at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

27  [8] *See* Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action
28  Litigation: 2021 Full-Year Review at 20, Figure 20 (NERA Jan. 25, 2022), available at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y.html.

Any claim disputes that cannot be resolved will be presented to the Court. *Id.* ¶8.3 (d).

After the Settlement's Effective Date, the passing of all applicable deadlines, and the completion of the Claims Administrator's work calculating the Authorized Claimants' claims, Lead Plaintiff will move for an order allowing distribution of the Net Settlement Fund to Authorized Claimants. *Id.* ¶8.5. If there is any balance remaining in the Net Settlement Fund six (6) months after the initial distribution, the Claims Administrator shall, if feasible and economical, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. *Id.* ¶8.12.

### c.   The Anticipated Attorneys' Fees and Expenses Are Reasonable

The accompanying Fee and Expense Application requests an award attorneys' fees of 25% of the Settlement Amount, or $2,250,000, and reimbursement of litigation expenses of $714,330.84. The fee represents an approximate 50% discount to Counsel's lodestar. At any rate, a 25% fee request is well in line with the Ninth Circuit's "benchmark." *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (upholding fee award of 25% in $75 million settlement). Lead Counsel respectfully refers to the Fee and Expense Application for further discussion of this factor.[9]

### 4.   Class Members Are Treated Equitably Relative to One Another

As discussed below, a *pro rata* Plan of Allocation is fair, reasonable, and adequate; it does not treat Lead Plaintiff or any other Class Member preferentially. *See In re Zynga Sec. Litig.*, No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728, at *37 (N.D. Cal. Oct. 27, 2015).  This factor again supports final approval of the Settlement.

### 5.   The Remaining Ninth Circuit Factors Support Final Approval

#### a.   Extent of Discovery Completed and Stage of Proceedings at Which A Settlement Was Achieved

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Reid v. I.C. Sys.*, No. CV-12-2661-PHX-ROS, 2018 U.S. Dist. LEXIS

---

[9] Another Rule 23(e) factor is any agreements required to be identified under Rule 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").  Here, there are no agreements concerning the Settlement other than as memorialized in the Stipulation.

125663, at *7 (D. Ariz. July 27, 2018) (citation omitted). In this case, discovery has been vigorous and extensive, including interrogatories, document requests, requests for admission, production of more than 180,000 documents totaling more than 2.2 million pages (not including native video, audio, and excel files), and fact and expert depositions. Plaintiff's Counsel and Defendants' Counsel held exhaustive discussions about discovery requests and the responses and objections to the discovery requests through extensive letters and emails, and numerous telephonic meet and confer conferences. Lead Plaintiff deposed eight fact witnesses and served subpoenas for documents on a number of third parties over the course of the Action. Defendants deposed Lead Plaintiff. Fact discovery closed on November 1, 2021. Lead Plaintiff served comprehensive reports from two expert witnesses (in addition to the previously served expert report in connection with Lead Plaintiff's motion for class certification), who were subsequently deposed by Defendants. Defendants for their part served four comprehensive expert reports.

There is no question that discovery had progressed to a stage where counsel for all parties were well positioned to pursue fully informed mediation, overseen by a highly qualified and respected mediator.[10]

**b.   Risk of Maintaining Class Action Status throughout Trial**

Lead Counsel believes maintaining class action status through trial was likely. Nevertheless, Rule 23(c)(1) authorizes the court to "decertify a class at any time" before a decision on the merits. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

---

[10] *See, e.g. Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *42-43 (N.D. Cal. Feb. 11, 2016) ("The Settlement reflects three and a half years of completed work, including pre-filing investigation, which included review and analysis of Zynga's SEC filings, earnings calls, and other public statements, analysis reports, and media coverage, as well as interviews with confidential witnesses; drafting the complaint; opposing two rounds of Defendants' motions to dismiss and a motion for reconsideration; working with damages, gaming, and accounting consultants; propounding and responding to some discovery; and preparing for and participating in mediation, which involved drafting a detailed mediation statement after reviewing Zynga's confidential, internal financial documents. The Settlement also followed a full-day mediation with an experienced mediator and follow-up private negotiations between the parties."); *In re Amgen Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *10 (C.D. Cal. Oct. 25, 2016) ("The more discovery that has been completed, the more likely it is that the parties have a clear view of the strengths and weaknesses of their cases.").

Defendants, in response to Plaintiff's class certification motion, specifically reserved their right to seek decertification.  ECF No. 71.

### c.   **The Experience and Views of Counsel**

The opinions of experienced counsel supporting a settlement after vigorous negotiations are given considerable weight. As one court put it:

> Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation. Thus, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.

*In re Apollo Grp. Inc. Sec. Litig.,* No. CV 04-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 55622 at *9-10 (D. Ariz. Apr. 20, 2012) (internal quotations and citation omitted).[11]

Plaintiffs' Counsel have significant experience in securities and other complex class action litigation, achieving numerous class action settlements approved by many courts across the country and recovering substantial monetary benefits for class members. *See* Ruthizer Decl. ¶179 & Ex. 5 (Wolf Popper Resume). It is their informed opinion that, given the uncertainty and expense of pursuing this case through trial, the Stipulation is fair, reasonable, and adequate and in the best interests of the Class. *Id.* ¶¶9-10, 111-12. Plaintiff's Counsel thus unequivocally endorse the proposed Stipulation. *Id.*

### d.   **Reaction of the Class[12]**

The deadline to file objections to the Settlement is June 1, 2022.  As of May 18, 2022, no objections have been filed.  Lead Plaintiff and Lead Counsel will respond to any objections filed in their reply papers.

Lead Plaintiff supports the Settlement as fair, reasonable, and adequate.  Ruthizer Decl. Ex. 4 (Jackson Decl.) ¶25.

---

[11] *See also Reid*, 2018 U.S. Dist. LEXIS 125663, at *7 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.  Thus, counsel's recommendations are given a presumption of reasonableness." (citation omitted)).

[12] "No government entity has participated in this action, meaning this factor is inapplicable to the Court's analysis.  *Reid*, 2018 U.S. Dist. LEXIS 125663, at *8.

**B.**   **The Plan of Allocation Should be Finally Approved**

The Plan of Allocation (Ruthizer Decl. Ex. 1.C (Longform Settlement Notice) p. 6, designed by Lead Counsel based on the findings of their damages expert, is intended to distribute the Settlement proceeds equitably among those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The Plan of Allocation provides that each Class Member's Recognized Loss will be calculated in accordance with the PSLRA's "per share basis" requirement (15 U.S.C. § 78u-4(a)(4)) and limitation on damages (15 U.S.C. § 78u-4(e)). A "Recognized Loss Amount" will be calculated for each Class Member's purchase or acquisition of Microchip common stock during the Class Period that is listed on the Claim Form and for which adequate documentation is provided. Such "Recognized Loss Amounts" will be aggregated across all of an Authorized Claimant's purchases or acquisitions of Microchip common stock during the Class Period to determine the total "Recognized Loss" for each Authorized Claimant.  Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution from the Net Settlement Fund based on the Authorized Claimant's net losses, and Lead Plaintiff will be subject to the same formula for distribution of the Settlement as other Class Members. *See In re Amgen Sec. Litig.*, 2016 U.S. Dist. LEXIS 148577, at *22 (finding the proposed plan of allocation, which allowed class members to receive a *pro rata* share of the set settlement amount, as reasonable and rational).

As prescribed Plan of Allocation treats all Class Members indiscriminately, equally, and equitably, it should be approved.

**C.**   **Notice to the Class Satisfied Rule 23 and Due Process**

In the Preliminary Approval Order, the Court found that "[t]he form and content of the Settlement Notice Program…and the methods set forth herein of notifying the Class of the Settlement and its terms and conditions," which included a Postcard Settlement Notice mailed to potential Class Members, a Summary Settlement Notice published on a national wire service, and a Settlement Website where copies of the Longform Settlement Notice and Proof of Claim and Release form could be downloaded,

meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995, and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto. [ECF No. 95 at 5.]

As described in the Declaration of Erik Nordskog Regarding Mailing of Postcard Settlement Notice, Publication of Summary Settlement Notice, Settlement Notice Program, and No Objections Received, filed herewith (Ruthizer Decl. Ex. 1), the Settlement Notice Program was administered in compliance with the Court's Preliminary Approval Order. Postcard Notice was mailed to 188,627 potential Class Members and nominees starting on April 1, 2022. The Settlement Website was updated on April 1, 2022, and contained copies of the Longform Settlement Notice, Proof of Claim and Release form, the Stipulation, the Summary Settlement Notice, the deadlines for Class Members to submit Objections and Proof of Claim and Release forms, Class Representative's motion for preliminary approval of the Settlement, and the Preliminary Approval Order. Summary Notice was published on April 8, 2022. A.B. Data established a telephone number for Class Members to call and ask questions, and A.B. Data has mailed Longform Settlement Notices and Claim Forms to any Class Members who has made such a request. The Settlement Notice Program therefore complied with the Court's Preliminary Approval Order and satisfied the requirements of Rule 23, due process, and the PSLRA.[13]

## IV.   **CONCLUSION**

Accordingly, Lead Plaintiff's Motion for Final Approval of the Proposed Class Settlement is well-taken, and should be granted in its entirety.

---

[13] *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (finding to comport with procedural due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 U.S. Dist. LEXIS 181055, at *30-31 (S.D. Cal. Oct. 22, 2018) (finding the procedures for notice, including emailing and mailing postcard notice, as well as publishing a long form notice on a settlement website, satisfied Rule 23); *Abante Rooter & Plumbing v. Pivotal Payments,* No. 3:16-cv-05486-JCS, 2018 U.S. Dist. LEXIS 232054, at *9-16 (N.D. Cal. Oct. 15, 2018) (finding notice sufficient where settling parties mailed postcard notice, established a settlement website with a long form notice, and provided a toll-free number for class members to inquire about the settlement).

Case 2:18-cv-02914-ROS   Document 96   Filed 05/18/22   Page 22 of 23

DATED this 18th day of May, 2022

By: */s/ Andrew S. Friedman*
Andrew S. Friedman
afriedman@bffb.com
Francis J. Balint, Jr. (007669)
fbalint@bffb.com
**BONNETT FAIRBOURN FRIEDMAN &
BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
*Attorneys for Lead Plaintiff and Court-
Appointed Liaison Counsel to the Class*


Robert C. Finkel (*Admitted Pro Hac Vice*)
rfinkel@wolfpopper.com
Joshua W. Ruthizer (*Admitted Pro Hac Vice*)
jruthizer@wolfpopper.com
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
*Attorneys for Lead Plaintiff and Court-
Appointed Class Counsel*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document filed through the ECF system on May 18, 2022 will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

Dated: May 18, 2022.

/s/ *Rose Creech*
An Employee of Bonnett Fairbourn Friedman
  & Balint, PC