Andrew S. Friedman (005425)
afriedman@bffb.com
Francis J. Balint, Jr. (007669)
fbalint@bffb.com
**BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
*Attorneys for Lead Plaintiff and Court-Appointed Liaison Counsel to the Class*

Robert C. Finkel (*Admitted Pro Hac Vice*)
rfinkel@wolfpopper.com
Joshua W. Ruthizer (*Admitted Pro Hac Vice*)
jruthizer@wolfpopper.com
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
*Attorneys for Lead Plaintiff and Court-Appointed Class Counsel*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald L. Jackson, as Trustee Under Agreement Dated 01/05/2012 by Ronald L. Jackson, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Microchip Technology, Inc.; Steven Sanghi; Ganesh Moorthy; And J. Eric Bjornholt,<br><br>Defendants. | Case No. 2:18-cv-02914-ROS<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES AND INCORPORATED MEMORANDUM OF LAW**<br><br>Hearing Date: June 22, 2022<br>Hearing Time: 11:00 a.m.<br>Courtroom: 604<br>Judge: Hon. Roslyn O. Silver |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................i

I.   INTRODUCTION .................................................................................................... 1

II.  THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE COMMON FUND ...................................................................................................... 2

   A.  The Court Should Award Plaintiff's Counsel a Reasonable Percentage of the Common Fund.......................................................................................... 2

   B.  Attorneys' Fees of 25% of the Settlement Fund Are Reasonable ........................ 4

      1.  The Results Achieved...................................................................................... 4

      2.  The Risks and Complexity of the Litigation ................................................... 6

      3.  The Skill Required and the Quality of Representation ................................... 9

      4.  The Contingent Nature of the Fee and the Financial Burden Carried by Counsel ..................................................................................................... 10

      5.  A 25% Fee Award is Consistent with Awards in Similar Complex Class Action Litigation................................................................................. 11

      6.  The Reaction of the Class Supports the Fee Request..................................... 12

      7.  The Lodestar Cross-Check Confirms the Requested Fee is Reasonable ...... 12

III. PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ........... 14

IV.  THE REQUESTED SERVICE AWARD IS WARRANTED .................................. 15

V.   CONCLUSION....................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................................ 3

*Aichele v. City of L.A.*,
  No. CV 12-10863-DMG (FFMx),
  2015 U.S. Dist. LEXIS 120225 (C.D. Cal. Sept. 9, 2015) ........................................ 2

*In re Am. Apparel S'holder Litig.*,
  No. CV 10-06352 MMM (JCGx),
  2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) .................................... 2, 9

*Ansell v. Laikin*,
  No. CV 10-9292 PA (AGRx),
  2012 U.S. Dist. LEXIS 198468 (C.D. Cal. July 11, 2012) ........................................ 6

*In re Apollo Grp. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT,
  2012 U.S. Dist. LEXIS 55622 (D. Ariz. Apr. 20, 2012) ................................ 3, 11, 13

*In re Apple Computer Sec. Litig.*,
  No. C-84-20148 (A)-JW,
  1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ........................................ 11

*In re Aqua Metals, Inc. Sec. Litig.*,
  No. 17-cv-07142-HSG,
  2022 U.S. Dist. LEXIS 36944 (N.D. Cal. Mar. 2, 2022) ........................................ 15

*Armes v. Hot Pizzas, LLC*,
  No. CV-16-01152- PHX-JJT,
  2017 U.S. Dist. LEXIS 89920 (D. Ariz. June 9, 2017) ............................................ 16

*Atlas v. Accredited Home Lenders Holding Co.*,
  No. 07-CV- 00488-H(CAB),
  2009 U.S. Dist. LEXIS 103035 (S.D. Cal. Nov. 2, 2009) ........................................ 4

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................ 13

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .................................................................................... 5

*Brown v. China Integrated Energy*,
  No. CV 11-02559 BRO (PLAx),
  2016 U.S. Dist. LEXIS 204416 (C.D. Cal. July 22, 2016) ........................................ 6

*Ching v. Siemens Indus.*,
  No. 11-cv-048383-MEJ,
  2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27, 2014) ...................................... 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ................................................................................. 8

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) .......................................................... 10

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC,
   2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ............. 5, 10, 11, 13

*Glass v. UBS Fin. Servs., Inc.*,
   331 F. App'x 452 (9th Cir. 2009) ........................................................... 3

*Gould v. Rosetta Stone, Ltd.*,
   No. C 11-01283 SBA,
   2013 U.S. Dist. LEXIS 138921 (N.D. Cal. Sep. 26, 2013) .................... 13, 15

*Gudimetla v. Ambow Educ. Holding*,
   No. CV 12-5062 PSG (AJWx),
   2015 U.S. Dist. LEXIS 187106 (C.D. Cal. Mar. 16, 2015) ..................... 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 2

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ..................................................................... 14

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST,
   2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17, 2018) .................... 6

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ..................... 4, 9

*In re High-Tech Emp. Antitrust Litig.*,
   No. 11-CV-02509-LHK,
   2015 U.S. Dist. LEXIS 118052 (N.D. Cal. Sept. 2, 2015) ..................... 14

*Hopkins v. Stryker Sales Corp.*,
   No. 11-CV-02786-LHK,
   2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) ....................... 13

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ............................................................. 6

*Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*,
   No. C 07-00362 MHP,
   2009 U.S. Dist. LEXIS 101586 (N.D. Cal. Oct. 26, 2009) .................... 16

*Julian v. Swift Transp. Co.*,
   No. CV-16-00576-PHX-ROS,
   2020 U.S. Dist. LEXIS 189886 (D. Ariz. Oct. 13, 2020) ...................... 16

*In re Lithium Ion Batteries Antitrust Litig. v. Andrews*,
   853 F. App'x 56 (9th Cir. 2021) .................................................................................. 16

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ....................................................................................... 6

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04 Civ. 8144 (CM),
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) .......................................... 17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ....................................................................................... 16

*In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*,
   No. MDL No. CV-07-1825-CAS(MANx),
   2012 U.S. Dist. LEXIS 160680 (C.D. Cal. Nov. 7, 2012) ............................................ 6

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) ........................................................................... 10, 16

*Monterrubio v. Best Buy Stores, L.P.*,
   No. 11-cv-03270-MCE-AC,
   2013 U.S. Dist. LEXIS 166021 (E.D. Cal. Nov. 20, 2013) ......................................... 16

*Morales v. Stevco, Inc.*,
   No. 1:09-cv-00704 AWI JLT,
   2012 U.S. Dist. LEXIS 68640 (E.D. Cal. May 16, 2012) ........................................... 16

*In re Nuvelo, Inc. Sec. Litig.*,
   No. C 07-04056 CRB,
   2011 U.S. Dist. LEXIS 72260 (N.D. Cal. July 6, 2011) .............................................. 12

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................................... 9

*In re OmniVision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................ passim

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................. 12, 16

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................................... 6

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ......................................................................................... 4

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW,
   2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ........................................... 13

*Radcliffe v. Experian Info. Sols.*,
   715 F.3d 1157 (9th Cir. 2013) ..................................................................................... 16

*Ramirez v. Thomas Arnold Inc.*,
No. CV-17-00150-PHX-SMM,
2018 U.S. Dist. LEXIS 57520 (D. Ariz. Apr. 3, 2018) ................................ 15

*Reid v. I.C. Sys.*,
No. CV-12-02661-PHX-ROS,
2018 U.S. Dist. LEXIS 125663 (D. Ariz. July 26, 2018) ........................ 4, 10

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ................................................................. 11

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..................................................................... 15

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ................................................................. 3, 4

*Sudnagunta v. NantKwest, Inc.*,
No. CV 16-1947-MWF (JEMx),
2019 U.S. Dist. LEXIS 81337 (C.D. Cal. May 13, 2019) ..................... 12, 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ....................................................................... 3

*United States v. Armour & Co.*,
402 U.S. 673 (1971) ..................................................................................... 9

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ("*Vizcaino II*, 290 F.3d") ................... passim

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ...................................................................... 10

*Winkler v. NRD Mining, Ltd.*,
198 F.R.D. 355 (E.D.N.Y. 2000) ............................................................... 11

*Wood v. Ionatron, Inc.*,
No. CV 06-354-TUC-CKJ,
2009 U.S. Dist. LEXIS 140975 (D. Ariz. Sep. 28, 2009) .......................... 12

*Zhu v. Taronis Techs. Inc.*,
No. CV-19-04529-PHX-GMS,
2021 U.S. Dist. LEXIS 44213 (D. Ariz. Mar. 8, 2021) ............................. 11

## **Statutes**

15 U.S.C. § 78u-4(a)(6) ..................................................................................... 3

15 U.S.C. §78u-4(a)(4) ..................................................................................... 15

1    **I.   INTRODUCTION**

2          Lead Plaintiff respectfully requests that the Court enter an Order awarding (a)

3    Plaintiff's Counsel attorneys' fees in the amount of 25% of the $9 million cash Settlement

4    Fund, or $2,250,000, and reimbursement of Litigation expenses in the amount of

5    $714,330.84, plus interest earned on both amounts at the same rate as the Settlement Fund,

6    and (b) Lead Plaintiff a Class Representative Service Award of $15,000 (the "Motion" or

7    "Fee and Expense Application").

8          Plaintiff's Counsel zealously litigated this Action for more than three years,

9    ultimately achieving a proposed Settlement of an immediate cash payment of $9 million.

10   This represents a very favorable result for the Class when compared to the significant risks

11   and delays of continued litigation.[1]  During the Litigation, Plaintiff's Counsel prepared and

12   filed the initial complaint; successfully moved for the appointment of lead plaintiff;

13   prepared a detailed and extensively researched and investigated Amended Complaint;

14   successfully opposed in significant part Defendants' motion to dismiss; obtained class

15   certification; conducted substantial discovery, including analyzing the production of over

16   180,000 documents totalling over 2.2 million pages and conducting eight depositions,

17   including the depositions of the three Individual Defendants; carefully analyzed the merits

18   of the Action with the assistance of consulting and testifying experts; and successfully

19   negotiated the proposed Settlement with the involvement of a highly-regarded mediator.

20   Plaintiff's Counsel collectively worked over 7,782 hours at a lodestar of $4,487,811.50

21   prosecuting this Litigation on behalf of the Class, and expended $714,330.84 in Litigation

22   expenses, all on a contingency basis with no guarantee of ever being paid.

23         Plaintiff's Counsel believe that award of attorneys' fees of 25% of the $9 million

24   Settlement Fund, or $2,250,000, plus interest earned thereon, reflects the many significant

25   risks they have taken and the excellent result achieved in a hard-fought and difficult

26   _____

27   [1] *See* Declaration of Joshua Ruthizer in Support of Lead Plaintiff's Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation and (2) An Award of Attorneys' Fees and Reimbursement of Litigation Expenses, dated May 18, 2022 and filed

28   herewith ("Ruthizer Declaration") ¶¶114-38.

litigation. The requested fee is reasonable, in line with the benchmark for fees in the Ninth Circuit, represents a significant *negative* lodestar multiplier of approximately 0.5, and is well within the range of attorneys' fees awarded in similar complex, contingency cases. The costs and expenses requested are likewise reasonable, were necessary to the successful prosecution of the Action, and should be approved.  Finally, Plaintiff's Counsel seeks approval of a $15,000 service award for Mr. Jackson—as provided by the Stipulation—to compensate him for his significant efforts on behalf of the Class.

## II.  THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE COMMON FUND[2]

### A.  The Court Should Award Plaintiff's Counsel a Reasonable Percentage of the Common Fund

"In calculating attorneys' fees in class actions, the district court has discretion to use either a percentage or lodestar method in order to calculate the attorneys' fees to be awarded to counsel." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). As the Ninth Circuit has explained, however, "the primary basis of the fee award remains the percentage method," while "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("*Vizcaino II*"); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at *66 (C.D. Cal. July 28, 2014) ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.")

Many courts and commentators have recognized that the analysis is the preferred approach in class action fee requests "because it more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Aichele v. City of L.A.*, No. CV 12-10863-DMG (FFMx), 2015 U.S. Dist. LEXIS 120225, at *15 (C.D. Cal. Sept. 9, 2015)

---

[2] For a recitation of the factual and procedural background of the Litigation, Lead Plaintiff respectfully refers the Court to the Ruthizer Declaration and Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, filed herewith and incorporated by reference herein.

(citing cases). "[A] number of salutary effects can be achieved by this procedure, including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and the court and providing a degree of predictability to fee awards." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1376 (N.D. Cal. 1989); *see also In re Apollo Grp. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 55622, at *20 (D. Ariz. Apr. 20, 2012) ("Because the benefit to the class is easily quantified in common-fund settlements, courts can award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.")

Finally, application of the percentage-of-the-fund method is consistent with the PSLRA, which governs this securities action, and which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.").

For the forgoing reasons, Plaintiff's Counsel respectfully submit that the Court should employ the percentage-of-recovery method to award attorneys' fees, and use an informal lodestar cross-check to assess the reasonableness of the percentage award. *Vizcaino II*, 290 F.3d at 1050, n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure …."); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check"); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (suggesting a lodestar cross-check and adjustment in special circumstances when "the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors"). As demonstrated below, such an analysis shows reflects a *negative* lodestar multiplier, confirming the reasonableness of the award.

**B.   Attorneys' Fees of 25% of the Settlement Fund Are Reasonable**

The Ninth Circuit has established twenty-five percent of the fund as the 'benchmark' award that should be granted in common fund cases." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *19 (C.D. Cal. June 10, 2005); *see also Six (6) Mexican Workers*, 904 F.2d at 1311 ("In [*Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989)], we established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases."). "That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." *Graulty*, 886 F.2d at 272; *see also Reid v. I.C. Sys.*, No. CV-12-02661-PHX-ROS, 2018 U.S. Dist. LEXIS 125663, at *11 (D. Ariz. July 26, 2018) (In the Ninth Circuit, "in common fund cases, the 'benchmark' award is 25 percent of the recovery obtained, with 20–30% as the usual range.").

Factors that courts in the Ninth Circuit use to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required and the quality of work performed; (4) the market rate for the particular field of law; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vizcaino II*, 290 F.3d at 1048-52; *Six (6) Mexican Workers*, 904 F.2d at 1311; *In re OmniVision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV- 00488-H(CAB), 2009 U.S. Dist. LEXIS 103035, at *11 (S.D. Cal. Nov. 2, 2009).

Consideration of these factors supports approval of the requested attorneys' fees.

**1.   The Results Achieved**

The most important factor in evaluating the reasonableness of a fee request is the degree of success in achieving results for the class. *In re Bluetooth Headset Prod. Liab.*

*Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *36 (N.D. Cal. Feb. 11, 2016) (the recovery amount "is generally considered the most important").

Here, Plaintiff's Counsel have achieved a significant and certain cash payment of $9 million for the benefit of the Class without the substantial risk, delay, expense, and uncertainty of continued litigation and trial. The recovery equates to approximately 6.5% of the Class's estimated maximum recoverable damages of $138.2 million. However, the $138.2 million estimated damages figure assumes, arguendo, among other things, (i) Lead Plaintiff was able to prove *every aspect* of his claims on liability, including falsity and scienter, (ii) Lead Plaintiff's damages model was accepted by the jury *in full*, including issues of loss causation with respect to the disclosure of adverse "confounding" information at the end of the Class Period unrelated to the issues in the case, and Defendants' alternative models were entirely rejected by the jury, and (iii) after a judgment in favor Lead Plaintiff and the Class, *all* Class Members filed claims on all shares purchased during the Class Period and had no offsetting gains. *See* Ruthizer Decl. ¶¶129-37. Accordingly, the $9 million risk-free Settlement represents a much higher percentage than 6.5% of the realistic range of potential provable damages, without being subjected to the risk of summary judgment and pre-trial motions, trial, appeals, and a claims process.

The $9 million Settlement Amount also represents an excellent result when compared to recoveries in similar cases. For example, according to Cornerstone Research, in 2021, the median settlement of a securities class action was $8.3 million, less than the $9 million Settlement here. Cornerstone also reports that the median settlement as a percentage of estimated damages in Rule 10b-5 class actions involving damages between $75 million and $149 million was 7.4% in 2021, and 4.9% from 2012 to 2020, in line with the Settlement here.[3] Further, according to NERA, in 2021, the median settlement value

---

[3] *See* Securities Class Action Settlements - 2021 Review and Analysis at 4 and 6, Figure 5 (Cornerstone Research 2022), available at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

for all securities class actions, excluding merger objection cases and settlements of over $1 billion and $0, was $8 million, less than the $9 million Settlement here.[4]  *Cf. Brown v. China Integrated Energy*, No. CV 11-02559 BRO (PLAx), 2016 U.S. Dist. LEXIS 204416, at *31-32 (C.D. Cal. July 22, 2016) (finding that a $2.5 million settlement, which constituted 4.5% of the estimated damages, was "a good result").

### 2.   The Risks and Complexity of the Litigation

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re OmniVision*, 559 F. Supp. 2d at 1046-47; *see In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, No. MDL No. CV-07-1825-CAS(MANx), 2012 U.S. Dist. LEXIS 160680, at *13 (C.D. Cal. Nov. 7, 2012) (in determining class counsel's payment, "the Court is mindful that this litigation was especially complex"); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (upholding fee award "because of the complexity of the issues and the risks").

As a general matter, courts have long recognized that securities class actions are complex, "notoriously difficult and unpredictable."  *See Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *37 (N.D. Cal. Dec. 17, 2018) (noting "the inherent uncertainties of trying securities fraud cases" for class counsel); *Ansell v. Laikin*, No. CV 10-9292 PA (AGRx), 2012 U.S. Dist. LEXIS 198468, at *19 (C.D. Cal. July 11, 2012) (courts "routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

This securities case was no different.  As discussed in Lead Plaintiff's Motion for

---

[4] *See* Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review at 20, Figure 20 (NERA Jan. 25, 2022), available at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y.html.

Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Motion"), filed concurrently herewith, both liability and damages issues were exceedingly complicated and risky. *See* Final Approval Motion, § III.A.3.a; Ruthizer Decl. ¶¶114-38.

For example, the Court dismissed 40 of 53 alleged false statements in the Amended Complaint, *Id.* ¶¶61-65, 116, and Lead Counsel anticipated that Defendants would, at summary judgment and trial, assert challenges to the falsity and scienter of each of the remaining false statements.  Lead Counsel anticipated that Defendants would dispute scienter, contending that they did not know of Microsemi's inventory and revenue practices during the Class Period because, among other things, it would be counterintuitive for Defendants (each sophisticated businessmen) to knowingly overpay for a company plagued with problems, and Defendants were gathering and learning additional information about Microsemi's business throughout the Class Period.  Lead Counsel also anticipated that Defendants would argue that the alleged False Statements were factually correct, and therefore not misleading, because, among other reasons, Microsemi's financial information that was used (combined with Microchip's) in the majority of the remaining False Statements was taken from Microsemi's publicly reported filings, which were audited by PricewaterhouseCoopers, and have never been restated.  *Id.* ¶¶114-21.

There were also risks related to proving loss causation and damages.  On August 9, 2018, Defendants announced, among other things, that they had found that Microsemi had aggressively shipped inventory into the distribution chain (i.e., channel stuffing) and that correcting that inventory would result in Microchip having lower cash flow and a higher debt leverage that was previously disclosed (5.0x v. 4.7x). The Amended Complaint alleges that Defendants' misrepresentations concerning the Microsemi acquisition relating to channel stuffing, once revealed on August 9, 2018, caused Microchip common stock to fall $10.67 per share, or 10.9%.  ECF No. 32 (Am. Compl.) ¶394.

However, on August 9, 2018, Defendants also announced that, in addition to the "headwinds" Microchip was experiencing relating to the Acquisition, there were four other "small factors that are starting to impact the business" that together were "causing

7

[Defendants] to provide a cautious guidance for fiscal second quarter of 2019."  Ruthizer Decl. ¶122.  Those factors included issued related to tariffs imposed on China by the Trump Administration and long lead times for products that used Microchip semiconductors.  Lead Counsel anticipated that Defendants would have argued that all or a significant portion of the decline in Microchip's stock price on August 10, 2018 reflected investors' reaction to these four factors (or confounding information), which were unrelated to the alleged fraud and/or had implications for the semiconductor industry more broadly.  Lead Counsel also anticipated that Defendants would argue that Plaintiff's damage expert's method for calculating the amount of the August 10, 2018 decline in Microchip's stock that was related to Defendants' alleged false and misleading statements and not the confounding information was unreliable and should be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), or that Plaintiff's alleged damages statements were overstated.  In addition, Lead Counsel anticipated that Defendants would argue that the material facts concerning Microsemi's inventory issues were disclosed to investors on May 31, 2018, without any adverse impact on Microchip's stock price.

Though Lead Plaintiff and Lead Counsel believe they could have succeeded in establishing each of the elements of the alleged claims, and defeated these and other arguments raised by Defendants, they would be required to prove all elements of their claims to prevail, while Defendants need only succeed on one defense to potentially defeat the entire action at summary judgment and trial.  Thus, there is no guarantee that the Class would prevail, and even if it did, how rulings on Defendants' expected motion for summary judgment and complex expert testimony matters would affect damages, or how the case might be presented to a jury.  Ruthizer Decl. ¶¶123-24.

Assuming *arguendo* Plaintiff could run this procedural, legal, and evidentiary gauntlet, any recovery for the class would be delayed for years by post-trial motions and appeals. The proposed Settlement therefore achieves a far more certain and preferable result for the Class members than continued litigation.  It strikes an appropriate balance between the potential benefits, on the one hand, and the risks and costs associated with

continued litigation, on the other. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982); *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).

### 3.   The Skill Required and the Quality of Representation

The skill and experience displayed by counsel is an additional factor in determining a proper fee. *Vizcaino II*, 290 F.3d at 1048. "The difficulty of securities litigation generally – particularly the challenges presented by the PSLRA's pleading requirements – requires skilled counsel familiar with the relevant statutes and case law." *In re Am. Apparel*, 2014 U.S. Dist. 184548, at *71; *In re OmniVision*, 559 F. Supp. 2d at 1047 (it is "particular true in securities cases" that the "prosecution and management of a complex national class action requires unique legal skills and abilities" because the PSLRA "makes it much more difficult for securities plaintiffs to get past a motion to dismiss").

Lead Counsel Wolf Popper is among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record of prosecuting class action securities cases throughout the country. *See* Ruthizer Decl. ¶179 & Ex. 5 (Wolf Popper Resume).  Liaison Counsel Bonnett Fairbourn is also well-skilled in securities litigation, and has been part of plaintiff counsel groups in some of Arizona's most notorious financial scandals, including the Charles Keating/Lincoln Savings & Loan, the Baptist Foundation of Arizona, and Mortgages Ltd./Radical Bunny scandals.  Plaintiff's Counsel respectfully submit that the quality of their efforts in this litigation, together with their substantial securities class action experience and commitment to this litigation, provided leverage to negotiate a very favorable Settlement.

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *In re Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *66. Here, Defendants were represented Wilson Sonsini Goodrich & Rosati, an elite national law firm that maintains a significant securities litigation and technology practice and who tenaciously represented their clients' interests.   Notwithstanding this formidable opposition, Plaintiff's Counsel's thorough investigation, and their own tenacity and willingness to put in the work this complex case demanded, were able to achieve the

favorable Settlement, militating in favor of the requested fee. *See In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008).

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Counsel

The contingent risk and financial burden presented to counsel in taking a case on a contingency basis has also been recognized by courts as an important factor in determining the reasonableness of the requested fee award and may justify above-market-value fee awards. *Reid*, 2018 U.S. Dist. LEXIS 125663, at *13-14; *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *60; *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013). Indeed, "[c]ourts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might have been paid nothing at all for their work." *Ching v. Siemens Indus.*, No. 11-cv-048383-MEJ, 2014 U.S. Dist. LEXIS 89002, at *8 (N.D. Cal. June 27, 2014) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (explaining that "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."). "This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino II*, 290 F.3d at 1051.

Contingency fee risk is not illusory. There are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. Subsequent to the passage of the PSLRA, a high percentage of securities cases have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's strict pleading standards.[5] Furthermore, the risks do not end at the motion to dismiss or summary judgment

---

[5] *See* NERA, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review

10

stage. In fact, even when a plaintiff is successful at trial, payment is not guaranteed.[6]

Here, Plaintiff's Counsel assumed the risk of representation, including devoting $4,487,811.50 in attorney time and advancing $714,330.84 in litigation expenses in on a completely contingent basis.  Ruthizer Decl. ¶¶164-66, 202.  These fees and expenses were potentially non-recoverable and, in the case of fees, counsel is affirmatively *not* seeking recovery of their full time expended, even though necessary to prosecute this case. This assumption of risk justifies an award of attorneys' fees of 25% of the Settlement Fund. *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *60 (granting 25% of the settlement fund as an award of attorneys' fees because "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."); *In re OmniVision*, 559 F. Supp. 2d at 1047 ("This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees.").

### 5.  A 25% Fee Award is Consistent with Awards in Similar Complex Class Action Litigation

The requested fee of 25% of the Settlement Fund, or $2,250,000 is in line with the Ninth Circuit benchmark and is well within the range of percentages awarded by this Court and other courts in the Ninth Circuit in similar securities settlements.  *See, e.g., Zhu v. Taronis Techs. Inc.*, No. CV-19-04529-PHX-GMS, 2021 U.S. Dist. LEXIS 44213, at *6 (D. Ariz. Mar. 8, 2021) (awarding attorneys' fees of 25% of $1.8 million settlement); *In re Apollo*, 2012 U.S. Dist. LEXIS 55622, at *25 (awarding attorneys' fees of 33.33% of $145 million settlement); *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 U.S. Dist.

at 14 Fig. 14 (NERA Jan. 25, 2022), available at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y.html (between 2012 and 2021, out of cases where a motion to dismiss was decided, 63% were either granted with or without prejudice).

[6] *See In re Apple Computer Sec. Litig.*, No. C-84-20148 (A)-JW, 1991 U.S. Dist. LEXIS 15608, at *1-4 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on posttrial motions); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million reversed on appeal on loss causation grounds and judgment entered for defendant); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs).

LEXIS 140975, at *18-19 (D. Ariz. Sep. 28, 2009) (affirming a 30% attorneys' fees award of $6.5 million settlement amount); *Sudnagunta v. NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2019 U.S. Dist. LEXIS 81337, at *17-18 (C.D. Cal. May 13, 2019) (awarding 25% of $12 million settlement); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 U.S. Dist. LEXIS 72260, at *4 (N.D. Cal. July 6, 2011) (30% of $8.9 million). Further, according to NERA, the median percentage of attorneys' fees for settlements between $5 million and $10 million from 2012 to 2021 was 30%, more than the fee requested here.[7]

### 6.   The Reaction of the Class Supports the Fee Request

While the time to object to the fee and expense application does not expire until June 1, 2022, as of May 18, 2022, Lead Counsel is not aware of any objection that has been received or filed. Ruthizer Decl. ¶196. Should any objections be received, Lead Counsel will address them in their reply papers.

Further, Lead Plaintiff supports the requested fee award and reimbursement of Litigation expenses.[8]   In fact, prior to the commencement of the Litigation, Lead Plaintiff negotiated a fee cap with Lead Counsel of 25% of the common fund achieved for the benefit of the Class, not including reimbursement of costs and expenses.   Regardless of whether the law in this Circuit and Court would support a larger fee, Plaintiff's Counsel is applying for that specified fee, which has been approved by Lead Plaintiff.

### 7.   The Lodestar Cross-Check Confirms the Requested Fee is Reasonable

The Court may conduct a lodestar cross-check to confirm the reasonableness of a requested percentage fee award.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("a crosscheck using the lodestar method can confirm that a percentage

---

[7] *See* NERA, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review at 27 Fig. 25 (NERA Jan. 25, 2022), available at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y.html;

[8] Ruthizer Decl. Ex. 4 (Declaration of Ronald L. Jackson in Support of Lead Plaintiff's Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation and (a) An Award of Attorneys' Fees and Litigation Expenses ("Jackson Declaration")) ¶¶31-32.

of recovery amount does not award counsel an exorbitant hourly rate") (internal quotation marks and citation omitted). The lodestar cross-check calculation need not entail "mathematical precision nor bean counting," and the Court may rely on summaries submitted by the attorneys rather than reviewing actual billing records.[9] After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at the multiplier. "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on a contingent-fee case." *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939, at *11 (N.D. Cal. Feb. 6, 2013). If the multiplier falls within an acceptable range, it further supports the conclusion that the fees sought are, in fact, reasonable. *See Vizcaino II*, 290 F.3d at 1051. "In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4." *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *70.

Here, Plaintiff's Counsel have submitted declarations reporting, after the exercise of billing judgment,[10] 7,782.20 hours of time, for a total lodestar of $4,487,811.50. Ruthizer Decl. ¶¶172-78 & Exs. 2, 3. Compared against the requested attorneys' fees of $2,250,000, Plaintiff's Counsel's reported lodestar yields a ***negative*** multiplier of approximately 0.5. This is well-under the accepted range within this Circuit, and "indicates that Class Counsel is seeking payment for only a portion of the hours that they expended on the action," and demonstrates reasonableness.[11] As detailed in their respective declarations, Plaintiff's Counsel are highly experienced in the area of securities litigation and class actions, and the

---

[9] *See In re Apollo*, 2012 U.S. Dist. LEXIS 55622, at *26 n.2 ("an itemized statement of legal services is not necessary for an appropriate lodestar crosscheck."); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (accepting sworn declarations submitted by counsel).

[10] Plaintiff's Counsel have subtracted from their lodestar calculation any individual with fewer than ten hours billed to the Action and time billed by law school interns and summer associates, and limited their lodestar analysis to the period ending March 11, 2022, the date the Court preliminarily approved the Settlement. Ruthizer Decl. ¶174 & Exs. 2, 3.

[11] *See Gould v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 U.S. Dist. LEXIS 138921, at *18 (N.D. Cal. Sep. 26, 2013) ("Thus, the requested fee award results in a so-called negative multiplier, which suggests that the percentage of the fund amount is reasonable and fair."); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at *42 (N.D. Cal. Nov. 26, 2007) (same).

1    hourly rates submitted reflect actual and customary billing rates. *Id.* ¶¶175-77 & Exs. 2, 3.

2         The lodestar cross-check thus confirms the reasonableness of the requested fee

3    award, particularly in light of the significant results achieved by the Settlement, the

4    contingent nature of Plaintiff's Counsel's fee arrangement, and the skill and expertise

5    Plaintiff's Counsel employed in achieving this excellent Settlement.

6    **III. PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE**
     **NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**
7
         "In common fund cases, the Ninth Circuit has stated that the reasonable expenses of
8
     acquiring the fund can be reimbursed to counsel who has incurred the expense." *In re High-*
9
     *Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *58
10
     (N.D. Cal. Sept. 2, 2015). Compensable expenses are those "that would typically be billed
11
     to paying clients in non-contingency matters." *In re OmniVision*, 559 F. Supp. 2d at 1048;
12
     *see generally Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).
13
         Here, Plaintiff's Counsel requests reimbursement of $713,330.84 in expenses
14
     necessarily incurred in the prosecution of this action.   Ruthizer Decl. ¶¶202-14. All
15
     submitted expenses are of the sort typically billed by attorneys to paying clients. A
16
     significant portion of the expenses were incurred for professional services rendered by
17
     Lead Plaintiff's experts and investigators, costs related to depositions, and costs related to
18
     electronic discovery services and hosting, and the remaining expenses are attributable to
19
     the costs of legal and factual research, copying of documents and other incidental expenses
20
     incurred in the course of the Litigation.[12]  These expenses were critical to Lead Plaintiff's
21
     success in achieving the proposed Settlement, are reasonable in amount, and are customary
22
     and necessary expenses for a complex securities action. As such, they should be reimbursed
23

24

25   [12] With respect to the expert and investigator costs in particular, it is clear that such
     expenses were vital to the recovery.  For example, Judge Tuchi specifically relied on
26   interviews conducted by the investigator with certain confidential witnesses in finding that
     Lead Plaintiff adequately pleaded scienter.  ECF 44 (MTD Order) at 17-18.  Lead
27   Plaintiff's experts provided written reports and deposition testimony concerning the market
     efficiency of Microchip's common stock, damages, loss causation, falsity, and scienter.
28   Ruthizer Decl. ¶¶80, 96.  A gap in any of those elements would have resulted in a judgment
     for defendants.

1    in full.[13]

2        It is also important to note that, as of May 18, 2022, no objections to the expense

3    request have been received, and the amount requested is within the $800,000 limit provided

4    for in the Settlement Notice Program. Ruthizer Decl. ¶212.

5    **IV. THE REQUESTED SERVICE AWARD IS WARRANTED**

6        The PSLRA provides that a Court may award "reasonable costs and expenses

7    (including lost wages) directly relating to the representation of the class to any

8    representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).  The Ninth

9    Circuit recognized that service awards are "fairly typical" and are "intended to compensate

10   class representatives for work done on behalf of the class, to make up for financial or

11   reputational risk undertaken in bringing the action, and, sometimes, to recognize their

12   willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d

13   948, 958-59 (9th Cir. 2009). Class representative are eligible for reasonable service awards

14   if they have actively participated in the litigation to protect the interests of the class, in spite

15   of the personal risks they faced for their participation in the litigation.  *See Gould*, 2013

16   U.S. Dist. LEXIS 138921, at *20.[14]

17       In order to ensure that adequacy of representation has not been undermined, courts

18   must scrutinize incentive award requests.  *Ramirez v. Thomas Arnold Inc.*, No. CV-17-

19   00150-PHX-SMM, 2018 U.S. Dist. LEXIS 57520, at *6 (D. Ariz. Apr. 3, 2018). In

20   evaluating whether the Settlement grants preferential treatment to class representatives, the

21   Court may consider whether there is a "significant disparity between the incentive awards

22   and the payments to the rest of the class members" such that it creates a conflict of interest.

23

24   [13] *See In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG, 2022 U.S. Dist. LEXIS
25   36944, at *25 (N.D. Cal. Mar. 2, 2022) (finding that typical out-of-pocket expenses include
     items "such as 1) meals, hotels and transportation; 2) photocopies; 3) postage, telephone,
26   and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7)
     class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.").

27   [14] Additional factors may include "the risk to the class representative in commencing
     suit…the notoriety and personal difficulties encountered by the class representative…[and]
28   the duration of the litigation." *Gudimetla v. Ambow Educ. Holding*, No. CV 12-5062 PSG
     (AJWx), 2015 U.S. Dist. LEXIS 187106, at *28 (C.D. Cal. Mar. 16, 2015)."

*Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1165 (9th Cir. 2013). To approve service awards, district courts must evaluate the awards individually to make sure they are not excessive "in light of the total amount recovered as well as the amount other collective members will receive."[15]

The requested $15,000 award makes up less than 0.17% of the $9 million Settlement fund.  This is a reasonable and small percentage of the Settlement Fund, and less than (on a percentage basis) awards granted to other class representatives.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 948 (affirming grant of a total of $45,000 in incentive awards to nine plaintiffs, which amounted to 0.17% of Settlement Fund); *Sudunagunta*, 2019 U.S. Dist. LEXIS 81337, at *20 (awarding a total of $15,000 in service awards to two plaintiffs).[16]  The exact amount that any class member may receive from the Settlement cannot be determined at this time but will be based on the number of shares purchased and sold during the class period and the dates and prices at which those shares traded and the comparable information for other class members.

Moreover, Lead Plaintiff's incentive award is reasonable because of the amount of time and effort he expended on the litigation. *See In re Lithium Ion Batteries Antitrust Litig. v. Andrews*, 853 F. App'x 56, 58 (9th Cir. 2021); *Armes v. Hot Pizzas, LLC*, No. CV-16-01152- PHX-JJT, 2017 U.S. Dist. LEXIS 89920, at *11 (D. Ariz. June 9, 2017). As detailed in his Declaration, Lead Plaintiff estimated that he spent more than 100 hours assisting

---

[15] *Julian v. Swift Transp. Co.*, No. CV-16-00576-PHX-ROS, 2020 U.S. Dist. LEXIS 189886, at *8 (D. Ariz. Oct. 13, 2020); *see also Monterrubio*, 291 F.R.D. at 462 ("To assess whether an incentive payment is excessive, district courts balance the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.") (internal citations and quotations omitted).

[16] *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (total incentive payments of $5,000 to each of two class representatives did not exceed .56% of total settlement); *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2012 U.S. Dist. LEXIS 68640, at *56 (E.D. Cal. May 16, 2012) (total incentive payment of $7,500 did not exceed .81% of total settlement of $925,000); *Monterrubio v. Best Buy Stores, L.P.*, No. 11-cv-03270-MCE-AC, 2013 U.S. Dist. LEXIS 166021, at *36 (E.D. Cal. Nov. 20, 2013) (total incentive payments of $2500 to the class representative did not exceed .63% of total settlement); *Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*, No. C 07-00362 MHP, 2009 U.S. Dist. LEXIS 101586, at *15 (N.D. Cal. Oct. 26, 2009) (total incentive payment of $7,500 did not exceed .5% of the total settlement of $1,500,000).

Lead Counsel in the resolution of the case for the benefit of the Class. He took an active role in pursuing the case by, among others, hiring counsel and negotiating a fee cap with Counsel that all Class members will benefit from, reviewing and approving pleadings and briefs, gathering documents and information in response to Defendants' discovery requests, preparing for and sitting for a deposition, and communicating with Lead Counsel concerning the litigation, strategy, and the mediation. Ruthizer Decl. Ex. 4 (Jackson Decl.) ¶¶9-24, 34. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *62 (S.D.N.Y. Dec. 23, 2009).

Lastly, the lack of any objections as of today, including to Lead Plaintiff's requested award, also demonstrates that his request is reasonable. *In re OmniVision*, 559 F. Supp. 2d at 1049 (awarding lead plaintiffs' request for $29,913.80 from the settlement fund for reimbursement of their costs and expenses (including lost wages) where class members were provided notice and did not object).

## V. CONCLUSION

For the foregoing reasons, it is respectfully requested that the Motion be granted.

DATED this 18th day of May, 2022.

By: */s/ Andrew S. Friedman*
Andrew S. Friedman
afriedman@bffb.com
Francis J. Balint, Jr. (007669)
fbalint@bffb.com
**BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
*Attorneys for Lead Plaintiff and Court-Appointed Liaison Counsel to the Class*

Robert C. Finkel (*Admitted Pro Hac Vice*)
rfinkel@wolfpopper.com

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joshua W. Ruthizer (*Admitted Pro Hac Vice*)
jruthizer@wolfpopper.com
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
*Attorneys for Lead Plaintiff and Court-Appointed Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document filed through the ECF system on May 18, 2022 will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

Dated: May 18, 2022.

/s/ *Rose Creech*
An Employee of Bonnett Fairbourn Friedman
  & Balint, PC